**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY, | |
| Plaintiff, | |
| vs. | Civil Action No. 4:25-cv-03464 |
| EMPOWER CLINIC SERVICES, L.L.C. d/b/a EMPOWER PHARMACY, | Hon. Sim Lake |
| Defendant. | |

**DEFENDANT EMPOWER CLINIC SERVICES, L.L.C. D/B/A**
**EMPOWER PHARMACY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR**
<u>**FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT**</u>

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .............................................................................1

II.     ARGUMENT ...................................................................................................2

        A.      Lilly Impermissibly Tries to Enforce Federal Law, Contravening § 337(a) ..........2

                1.      *Zyla* Held Only That Parallel State Law Claims Are Not
                        Preempted ...........................................................................................2

                2.      But No "Parallel" State Law for § 503A Exists ........................................4

                3.      As Lilly's Claims Exist Solely By Virtue of the FDCA, § 337(a)
                        Bars Them ...........................................................................................5

        B.      Lilly's "Unapproved Drug Theory" Fails..................................................................6

                1.      The CO, CT, HI, SC, TN, and WA Exemptions Apply...............................7

                2.      Alaska's Exemption Applies ...................................................................9

                3.      North Carolina's Learned Profession Exemption Applies........................10

                4.      Lilly's Texas Common Law Unfair Competition Claim Fails.................12

        C.      Lilly's False and Misleading Advertising Claims Fail.........................................14

                1.      Lilly's Conclusory Allegations of Direct Injury Fail...............................14

                2.      All of Lilly's Lanham Act Theories Are Precluded.................................21

                3.      Lilly Has Not Alleged Facts Showing Empower's Statements
                        Are False ...........................................................................................23

                4.      Lilly's Conclusory Allegations of Confusion and Materiality
                        Fail...................................................................................................24

                5.      Empower's Statements Are Nonactionable Puffery .................................25

III.    CONCLUSION ...............................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Collens*,
    444 P.3d 187 (Alaska 2019) ................................................10

*Alaska v. Express Scripts, Inc.*,
    No. 23-00233, 2024 WL 2321210 (D. Alaska May 22, 2024).............................10

*Allergan U.S. v. Imprimis Pharms., Inc.*,
    No. 17-1551, 2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ........................21, 22

*Am. Precision Ammunition, L.L.C v. City of Min. Wells*,
    90 F.4th 820 (5th Cir. 2024) ................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................17, 24

*Austin's Natural Frozen Pops, Inc. v. Jonny Pops, LLC*,
    No. 24-716, 2025 WL 888560 (W.D. Tex. Mar. 13, 2025) ............................16, 21

*Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*,
    No. 24-716, 2025 WL 3182084 (W.D. Tex. Nov. 10, 2025) ....................23, 24, 25

*Barron v. United States*,
    111 F.4th 667 (5th Cir. 2024) ................................................9

*Basic Cap. Mgmt. v. Dynex Cap., Inc.*,
    976 F.3d 585 (5th Cir. 2020) ................................................7

*Bass v. Stryker Corp.*,
    669 F.3d 501 (5th Cir. 2012) ................................................3

*Bernhard v. Whitney Nat'l Bank*,
    523 F.3d 546 (5th Cir. 2008) ................................................4

*Boltex Mfg. v. Galperti, Inc.*,
    No. 17-1439, 2018 WL 1535199 (S.D. Tex. Mar. 29, 2018).............................23

*Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*,
    No. 15-10734, 2021 WL 1165087 (N.D. Ill. Mar. 26, 2021) .............................25

*Cedra Pharmacy Houston, LLC v. UnitedHealth Grp., Inc.*,
    No. 17-3800, 2019 WL 1433600 (S.D. Tex. Mar. 7, 2019) ............................11, 12

*Cedra Pharmacy Houston, L.L.C. v. UnitedHealth Grp., Inc.*,
    798 F. App'x 826 (5th Cir. 2020) ..................................................................... 12

*Church Ekklasia Sozo Inc. v. CVS Health Corp.*,
    No. 20-00382, 2022 WL 1572732 (W.D.N.C. Feb. 25, 2022) ............................... 11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .............................................................................. 25

*Colo. Biolabs, Inc. v. Three Arrows Nutra, LLC*,
    No. 25-0601, 2025 WL 2524313 (N.D. Tex. Sept. 2, 2025) ................................. 18

*Crystaphase Products, Inc. v. Criterion Catalysts & Technologies, LP*,
    No. 17-00265, 2018 WL 4266237 (S.D. Tex. Aug. 20, 2018) ............................... 17

*Decorative Ctr. of Houston, L.P. v. Direct Response Publications, Inc.*,
    208 F. Supp. 2d 719 (S.D. Tex. 2002) ................................................................ 24

*Eli Lilly & Co. v. Adonis Health, Inc.*,
    No. 25-3536, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ........................... 19, 22

*Eli Lilly & Co. v. Mochi Health Corp.*,
    No. 25-03534, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025) .................... 5, 15, 16

*Eli Lilly & Co. v. Willow Health Servs.*,
    No. 25-3570, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025) ................... 18, 19, 20

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*,
    467 F.3d 466 (5th Cir. 2006) ................................................................................ 7

*Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*,
    894 F.3d 665 (5th Cir. 2018) .............................................................................. 18

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ................................................................................ 8

*Geomatrix, LLC, v. NSF Int'l*,
    629 F. Supp. 3d 691 (E.D. Mich. 2022), *aff'd* 82 F.4th 466 (6th Cir. 2023)......................... 19

*Greater Hous. Transp. Co. v. Uber Techs. Inc., et al*,
    No. 14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ........................... 18, 25

*Healthpoint, Ltd. v. Ethex Corp.*,
    273 F. Supp. 2d 817 (W.D. Tex. 2001) ............................................................... 22

*Hughes v. Boston Sci. Corp.*,
    631 F.3d 762 (5th Cir. 2011) ................................................................................ 3

*JHP Pharms., LLC v. Hospira, Inc.*,
   52 F. Supp. 3d 992 (C.D. Cal. 2014).................................................................22, 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..................................................................... 14, 15, 17, 20

*Mike Vaugh Custom Sports, Inc. v. Piku*,
   15 F. Supp. 3d 735 (E.D. Mich. 2014) .................................................................17

*Photoprotective Techs. Inc. v. Relex, Inc.*,
   No. 10-067, 2010 WL 11601560 (W.D. Tex. Dec. 9, 2010)..................................24

*POM Wonderful LLC v. Coca-Cola Co.*,
   573 U.S. 102 (2014)...............................................................................................21

*Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo*,
   No. 04-02-00188, 2003 WL 21972724 (Tex. App.—San Antonio Aug. 20,
   2003, pet. denied)............................................................................................ 13, 14

*Schoellkopf v. Pledger*,
   778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ......................................14

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010)....................................................................11

*State ex rel. Shikada v. Bristol-Myers Squibb Co.*,
   526 P.3d 395 (Haw. 2023)........................................................................................7

*Spano v. Whole Foods, Inc.*,
   65 F.4th 260 (5th Cir. 2023) ..............................................................................4, 6

*Sykes v. Health Network Sols., Inc.*,
   372 N.C. 326 (N.C. 2019)......................................................................................11

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
   659 S.W.3d 424 (Tex. 2023)..................................................................................14

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ..............................................................................................19

*U.S. ex rel. Univ. Loft Co. v. Avteq, Inc.*,
   No. 14-528, 2015 WL 13548950 (W.D. Tex. Dec. 22, 2015)...............................20

*White v. NYLIFE Sec., LLC*,
   551 F. Supp. 3d 974 (D. Alaska 2021)..................................................................10

*Wildman v. Medtronic, Inc.*,
   874 F.3d 862 (5th Cir. 2017) ..................................................................................6

*Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.,*
    134 F.4th 326 (5th Cir. 2025) ........................................................................ *passim*

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,*
    No. 22-04400, 2023 WL 6301651 (S.D. Tex. Sept. 27, 2023) .............................. 3

**Statutes**

15 U.S.C. § 1051 *et seq.* (Lanham Act) ....................................................... *passim*

21 U.S.C. § 337 ....................................................................................... 2, 4, 5

21 U.S.C. § 353a .................................................................................... 5, 19

21 U.S.C. § 503A ..................................................................................... *passim*

ALASKA STAT. § 17.20.110 ................................................................. 9, 10, 11

ALASKA STAT. § 45.50.471 ...................................................................... 9, 10

ALASKA STAT. § 45.50.481 ............................................................................ 9

HAW. REV. STAT. § 480 ............................................................................... 7

HAW. REV. STAT. § 481 ............................................................................... 7

TEX. HEALTH & SAFETY CODE § 431.054 ..................................................... 14

TEX. HEALTH & SAFETY CODE § 431.0585 .................................................... 14

TEX. HEALTH & SAFETY CODE § 431.059 ..................................................... 14

## I.     **<u>PRELIMINARY STATEMENT</u>**

Lilly's Opposition is long on rhetoric but short on law. Lilly has failed to present this Court with any actionable claim. Instead of supporting its Complaint, Lilly pivots, bolstering its claims with facts it has not (and cannot) plead, and citing cases that are inapposite.

To support its state law deceptive practice act claims, Lilly leans all the way into *Zyla*, a case holding that state laws which incorporate federal law are not preempted. But *Zyla* did not hold (or even consider) whether a private litigant can enforce § 503A when no "parallel" state law exists. As Lilly's Complaint correctly pleads, it is federal law—not state law—that draws the line between manufacturing and compounding. And because no private party can enforce the FDCA, Lilly's attempts to enforce the FDCA via "state law" claims are preempted.

Putting preemption aside, Lilly's attempt to sustain its state law claims also fails. Each state law provides safe harbors protecting businesses like Empower from being dragged into court for authorized activity. Each state allows pharmacies to compound without having to go through new drug approval; therefore compounding is authorized activity. The case law is clear—this Court ***can*** use these safe harbors protecting authorized activity to dismiss a complaint on a motion to dismiss.

Lilly's attempts to rehabilitate its false advertising claims fare no better. Lilly fails to plead any specific facts linking Empower's advertisements to any particular injury to Lilly. Moreover, via its federal false advertising claim, Lilly continues to police FDA regulatory policies, asking this Court to opine on matters on which FDA has yet to weigh in—such as how compounders can use studies of an active pharmaceutical ingredient like tirzepatide. Lilly also asks this Court to contradict FDA guidance by enforcing Lilly's concocted interpretation of "personalization." But Lilly is precluded from bringing false advertising claims like these.

In short, Lilly comes before this Court to play FDA—by attempting to enforce the FDCA by claiming Empower is manufacturing under the guise of compounding, and by bringing

precluded claims. But compounding is a lawful, Congressionally-sanctioned, state-authorized activity. Try as it might, Lilly cannot find any cause of action allowing Lilly to police it.

## II.  ARGUMENT

### A.  Lilly Impermissibly Tries to Enforce Federal Law, Contravening § 337(a)

Lilly purposefully avoids Empower's point that Lilly's Complaint fails to identify any parallel state laws to support its effort to enforce § 503A of the Federal Food, Drug, and Cosmetic Act ("FDCA"), relying heavily on *Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.*, 134 F.4th 326 (5th Cir. 2025) to assert that its claims are authorized. But all *Zyla* held was that **state** laws which incorporate federal law are not preempted. *Zyla* did not give Lilly carte blanche to enforce the FDCA in direct contravention of § 337(a)'s prohibition against private enforcement. 21 U.S.C. § 337(a) ("[All such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."). Lilly's claims are barred.

#### 1.  *Zyla* Held Only That Parallel State Law Claims Are Not Preempted

Lilly begins with the false premise that Fifth Circuit's holding in *Zyla* controls Empower's preemption argument here, and that Empower has "ignored binding precedent." ECF 49 at 8-10. Empower did not ignore *Zyla*; Empower cited *Zyla*, and articulated why it is inapposite. ECF 34 at 38-40. In *Zyla*, a drug manufacturer (Zyla) brought suit against Wells Pharma, an FDA-registered outsourcing facility, alleging that Wells' sale of a compounded drug violated state unfair competition laws. 134 F.4th at 331. Zyla alleged that California, Colorado, Connecticut, Florida, Tennessee, and South Carolina state laws each required Wells to obtain premarket approval (or new drug approval) prior to selling its drugs into those states. *Id*. Zyla **only** relied upon the **state** laws requiring premarket approval. Zyla did ***not*** allege that Wells failed to comply with FDCA's compounding statute. *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC,* No. 22-4400, First Am. Compl., ECF 9 (S.D. Tex. Jan. 3, 2023).

In the district court, Wells argued that the state laws added to federal requirements, resulting in conflict preemption because Wells' compounded medications were not required to obtain federal approval under the relevant compounding exemption. Dismissing, the district court found that plaintiff Zyla's state law claims "seek to create a requirement *in addition to* the FDCA's requirements—that premarket approval is required for drugs regardless of whether they are produced by compounding facilities. Because federal law does not require such approval, Plaintiff's claims are preempted, and Defendant's Motion is granted." *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, No. 22-04400, 2023 WL 6301651, *5 (S.D. Tex. Sept. 27, 2023) (cleaned up, emphasis added), *rev'd & vacated in part*, 134 F.4th 326 (5th Cir. 2025).

On appeal, therefore, the Fifth Circuit only considered "whether a State triggers implied obstacles-and-purposes preemption *when it expressly incorporates federal law into state law*." *Zyla*, 134 F.4th at 328 (emphasis added).[1] As the Fifth Circuit explained, obstacles-and-purposes (field) preemption occurs "when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id*. at 329. The Fifth Circuit assessed the cited state laws, reasoning that each relevant state law *incorporated* § 505's new drug approval requirements, resulting in parallel claims. *Id*. at 330-331. Thus, the Fifth Circuit held that "there is no conflict in terms, and no possibility of such conflict, for *the state statute makes federal law its own*." *Id*. at 328 (citing *California v. Zook*, 336 U.S. 725, 735 (1949)) (emphasis added).

*Zyla*'s holding is, therefore, far narrower and less novel than Lilly proclaims. ECF 49 at 8-10. *Zyla* merely reaffirmed that state laws that parallel federal requirements are not preempted—consistent with Fifth Circuit jurisprudence. 134 F.4th at 328-33; *see also Bass v. Stryker Corp.*, 669 F.3d 501, 512 (5th Cir. 2012) (authorizing parallel state law claims); *Hughes v. Boston Sci.*

---

[1] "Obstacles-and-purposes" preemption is a type of field preemption. *Zyla*, 134 F.4th at 328-29.

*Corp.*, 631 F.3d 762, 771 (5th Cir. 2011) (same); *Spano v. Whole Foods, Inc.*, 65 F.4th 260, 264 (5th Cir. 2023) (recognizing state tort law claims that parallel federal requirements).

        2.    <u>But No "Parallel" State Law for § 503A Exists</u>

*Zyla* did not hold (or even consider) whether a private litigant can enforce § 503A when no "parallel" state law exists. *Zyla* says nothing about what Lilly seeks to do here: enforce federal law in direct contravention of § 337(a). That distinction is dispositive. While Lilly proclaims that "Empower is in the exact same posture" (ECF 49 at 10) as the defendant in *Zyla*, Empower is not. Lilly explicitly tethers each of its "state law" claims to § 503A's compounding requirements, ***not*** § 505's new drug approval requirements (as in *Zyla*). Unlike § 505—which the Fifth Circuit found mirrored the cited state laws (*Zyla*, 134 F.4th at 330)—the state laws upon which Lilly relies have ***not*** incorporated § 503A. Simply put, ***there exists no state law corollary to § 503A***. Thus, Lilly could not plead any state law corollary for § 503A. *Zyla*, then, does not apply to Lilly's claims.

Lilly's reliance on—and attempt to enforce—§ 503A is apparent from the face of Lilly's Complaint. ECF 1 ¶¶ 75-82; *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (it is a "long-established axiom that a plaintiff is master of his complaint"). Lilly's "state law" claims are about allowing Lilly to draw the line between what is considered "lawful compounding" versus drug manufacturing, and about litigating Empower's alleged non-compliance with § 503A. ECF 1 ¶¶ 75-82. Lilly's Complaint alleges the following violations of § 503A of the FDCA:

- Empower cannot defend its conduct by claiming that its sale of unapproved compounded tirzepatide is authorized by Section 503A of the FDCA. ***Section 503A allows true compounders to compound and sell prescription drugs under narrowly confined conditions. Empower routinely and regularly does not comply with several of those conditions***. ECF 1 ¶ 80 (emphasis added).

- Among other things, Empower fails to follow pharmacy compounding standards established by the United States Pharmacopeia (USP), uses substandard ingredients, fails to obtain necessary prescriptions, fails to maintain true and accurate records, produces more than limited quantities of prescription drugs in advances of prescriptions, distributes or dispenses more than 5% of its total prescription volume

across state lines, and regularly produces large volumes of prescription drugs that are essentially copies of FDA-approved medicines. ECF 1 ¶ 81.[2]

- ***In sum, Empower's operations fall outside the scope of lawful compounding***, and Empower is unlawfully engaged in illegal mass-production of unapproved prescription drugs in violation of state laws prohibitions distribution of unapproved new drugs. ECF 1 ¶ 82 (emphasis added).

Lilly thus ***admits*** that ***each*** of its "state law" claims hinges on establishing Empower's alleged non-compliance with § 503A. Lilly's Complaint is not about state law; it is about whether Empower's operations "fall outside the scope of lawful compounding" because "Section 503A allows ***true*** compounders to compound … under narrowly confined conditions," but "Empower routinely and regularly ***does not comply*** with several of those conditions." ECF 1 ¶¶ 80, 82 (emphases added). The Complaint cites ***no*** Alaska, Colorado, Connecticut, Hawaii, North Carolina, South Carolina, Tennessee, Texas, or Washington law about these standards; there is none. There is ***no parallel state law*** to § 503A, as needed for *Zyla* to apply. *Zyla*, 134 F.4th at 328.

Finally, Lilly alleges that § 503A is an affirmative defense. Not so here, because unlike the plaintiff in *Zyla*, ***Lilly*** affirmatively incorporated § 503A ***into*** its Complaint, predicating each of its "state law claims" directly upon § 503A. Thus, it is not Empower's burden to establish compliance with § 503A, but Lilly's burden to establish non-compliance—which § 337(a) forbids.

3.    As Lilly's Claims Exist Solely By Virtue of the FDCA, § 337(a) Bars Them

Section 337(a) provides that, with narrow exceptions inapplicable here, "all such proceedings for the enforcement … of [the FDCA] shall be by and in the name of the United States." Section 337(a) "precludes state tort claims that 'exist solely by virtue of' the federal

---

[2] This paragraph relies directly on § 503A, which requires compliance with the United States Pharmacopeia chapter on pharmacy compounding (21 U.S.C. § 353a(b)(1)(B)), requires that compounded medications be based on a patient-specific prescription (§ 353a(a)), prohibits compounding of essential copies of commercially available medications (§ 353a(1)(D)), and limits dispensing across state lines compounded medications in quantities that exceed 5% of the total prescriptions order dispensed by the pharmacy absent a Memorandum of Understanding (§ 353a(b)(3)(B)).

- 5 -

regulatory scheme." *Wildman v. Medtronic, Inc.*, 874 F.3d 862, 868 n.6 (5th Cir. 2017) (quoting *Buckman, Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)); *see also Spano*, 65 F.4th at 262 ("It is indisputable that to the extent that [private parties] seek to enforce the FDCA …, they cannot."). And enforcing § 503A of the FDCA is exactly what Lilly seeks to do here.

Lilly does not even attempt to hide its hand, stating its intent is to enforce § 503A and determine when "lawful compounding" becomes manufacturing. ECF 1 ¶ 75 (alleging that "Empower is engaged in large-scale drug manufacturing under the guise of pharmacy compounding"). There simply are no state laws that draw this distinction. In fact, Lilly acknowledges this determination is a ***strictly federal*** one. ECF 1 ¶ 59 (citing the congressional report on the Food and Drug Administration Modernization Act of 1997, which added § 503A to the FDCA, and noting that Congress' purpose was to draw the line between "individualized therapy" and "manufacturing under the guise of compounding"). Therefore, Lilly's Complaint admits that federal law determines when "lawful compounding" becomes manufacturing.

Lilly continues its effort to enforce § 503A requirements to deem Empower's compounded medications "unapproved new drugs" by alleging specific instances of Empower's supposed non-compliance with § 503A. ECF 1 ¶ 81 (referencing § 503A requirements that Empower supposedly fails to meet). But again, Lilly identifies no corollary state laws that transform Empower's compounded medications into "new drugs" because of these alleged § 503A non-compliance instances. There are none. Plain and simple—Lilly seeks to interpret and enforce the FDCA. *Spano*, 65 F.4th at 262 ("It is indisputable that to the extent that [private parties] seek to enforce the FDCA …, they cannot."). Lilly's claims are impliedly preempted and must be dismissed.

**B.   <u>Lilly's "Unapproved Drug Theory" Fail</u>s**

Lilly broadly alleges that Empower's compounded medications are "unapproved drugs"

because Empower failed to obtain federal approval prior to selling and dispensing these compounded medications ("Unapproved Drug Theory"). ECF 1 ¶¶ 168, 182, 194, 207, 219, 231, 244, 259, & 272. Lilly's own allegations plead Lilly directly into each state's safe harbors because the sale of compounded medications absent new drug approval is expressly "permitted" and "authorized" under each states' pharmacy regulatory schemes. Empower's conduct is, therefore, exempt from liability under these states' deceptive practices and unfair competition acts.

Recognizing that state safe harbors threaten the viability of Lilly's claims, Lilly runs to a footnote in *Zyla*, proclaiming that *Zyla* categorically prohibits courts from considering affirmative defenses at the Rule 12(b)(6) stage. ECF 49 at 10 (citing *Zyla*, 134 F.4th at 331 n.2). Not so. *Zyla's* solitary footnote on the issue did not overturn the Fifth Circuit's long-held position that affirmative defenses that are apparent on the face of the Complaint may be considered at this stage. *Cf. Am. Precision Ammunition, L.L.C v. City of Min. Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (a "Rule 12(b)(6) dismissal may also 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint'"); *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (same); *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (same). And because the *Zyla* defendant did not raise the state safe harbors at all, the Fifth Circuit did not consider them. *Id*. *Zyla*'s footnote 2 is inapposite.

1.  The CO, CT, HI, SC, TN, and WA Exemptions Apply

The statutory "regulatory exemptions" in Colorado, Connecticut, Hawaii, South Carolina, Tennessee, and Washington apply based on the facts pleaded in the Complaint.[3] Lilly's Opposition

---

[3] Lilly asserts that HAW. REV. STAT. § 481A-5(a)(1)'s safe harbor is categorically inapplicable to Lilly's claims under Haw. Rev. Stat. § 480-2(a). But Lilly's claims cannot be reconciled with the Hawaii Supreme Court's reasoning in *State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 414 (Haw. 2023) (citing 481A-5(a)(1) and describing

misread the governing statutes and stretch Lilly's claims beyond what Lilly actually pled. These states exempt from liability conduct "authorized" or "permitted" under statutes or rules administered by regulatory bodies, precisely to avoid subjecting businesses, like Empower, to non-meritorious claims based on lawful activity. As Empower's Motion explained, each state has a comprehensive compounding framework that authorizes licensed pharmacies (like Empower) to compound and dispense medication without obtaining new drug approval. ECF 34 at 32. Empower sought judicial notice of its active nonresident pharmacy licenses in each state. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (a Court evaluating a Rule 12(b)(6) motion may consider judicially noticed facts). Empower's state licenses and the pharmacy regulatory schemes in these states authorize the exact conduct of which Lilly complains—selling and dispensing compounded medications absent undergoing new drug approval. The regulatory exemptions, therefore, apply.

Trying (in vain) to avoid this outcome, Lilly hedges that Empower must "prove" compliance with each states' compounding requirements to invoke these exemptions—but that argument wildly misstates these exemptions. The exemptions turn on whether the complained of activity is "permitted" or "authorized." The statutes and Empower's judicially noticeable licenses resolve that question on the pleadings; they show the specific challenged activity—selling and dispensing compounded medications absent new drug approval—is authorized and regulated and thus not actionable as "unapproved drug" sales under these states' consumer statutes. Empower need not "prove" compliance with each states' compounding requirements because Lilly's complained of conduct rests on the general assertion that new drug approval is necessary for compounded medications. ECF 1 ¶¶ 168, 182, 194, 207, 219, 231, 244, 259, and 272.

---

it as UDAP's "'safe harbor,' [which] exempts '[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency'").

Lilly, therefore, attempts to expand its allegations, citing state statutes and regulations that appear to nowhere in the Complaint to assert that the "complained of" conduct is broader than what Lilly has alleged. ECF 49 at 11. But, Lilly's state law claims are far more conclusory than Lilly argues in its Opposition. Nowhere in Lilly's Complaint does Lilly identify a ***single*** state compounding requirement with which Empower failed to comply. Instead, Lilly merely alleges that Empower's compounded medications are required to undergo new drug approval and did not. But, as Empower demonstrated in its Motion, Empower's sale of compounded medications is expressly authorized and permitted by each state board of pharmacy absent new drug approval. Therefore, Lilly's claims fail.

### 2.    Alaska's Exemption Applies

Lilly ***admits*** that the exemption set forth in ALASKA STAT. § 45.50.481(a)(1) applies to conduct that is "already regulated and prohibited by another statutory or regulatory scheme." ECF 49 at 14. Trying to escape that Lilly pleaded itself into the exemption (by repeatedly citing and describing the highly regulated ongoing oversight Alaska requires for new drug approval (ECF 1 ¶¶ 162-165)), Lilly pivots, trying to re-cast its claims as those of *per se* violations under ALASKA STAT. § 45.50.471(b). But Lilly's Opposition does not cite to a single place in its Complaint where it sets forth these supposed *per se* violations—because Lilly ***did not*** plead a *per se* claim.[4] *Barron*

---

[4] Even if this Court considers Lilly's new *per se* allegations (it should not), Lilly has not pled a single factual allegation to support violations of these subsections. To start, Lilly argues ALASKA STAT. § 45.50.471(b)(48), which prohibits violating a labeling or advertising provision of Alaska's FDCA, applies to its claims. But, Lilly's Complaint lacks any allegations describing how or why Empower's labels allegedly violate Alaska's FDCA. Lilly's solitary citation to ALASKA STAT. §§ 17.20.110(a)(2) cannot—and does not—carry the day. ECF 49 at 14. Further, Lilly's reliance on ALASKA STAT. § 45.50.471(b)(3) (prohibiting "causing a likelihood of confusion or misunderstanding as to the … approval … of goods"); § 45.50.471(b)(4) (barring "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have) § 45.50.471(b)(6) (outlawing "representing that goods or services are of a particular standard, quality, or grade … if they are of another") similarly fall flat. To support its new allegations that Empower violated these subsections, Lilly just concludes "that consumers are likely to assume that the tirzepatide drugs Empower sells in Alaska have received" new drug approval. ECF 49 at 15. But Lilly's Complaint lacks ***any*** factual underpinning.

*v. United States*, 111 F.4th 667, 679 (5th Cir. 2024) ("The controlling question is what claims the plaintiff—as master of his complaint—has actually pleaded.") (cleaned up). Lilly's Complaint references ALASKA STAT. § 45.50.471(a) as the ***sole*** basis for its UTPCA claim (ECF 1 ¶¶166, 170) and, as Lilly concedes (ECF 49 at 14), the exemption applies to ALASKA STAT. § 45.50.471(a).

Lilly next claims that Empower cannot satisfy the exemption at this stage. But numerous Alaska courts evaluate the applicability of the exemption at the Rule 12(b)(6) stage, and none have categorically held that the exemption cannot be so established. *See, e.g.*, *White v. NYLIFE Sec., LLC*, 551 F. Supp. 3d 974 (D. Alaska 2021) (considering the exemption on a motion to dismiss); *Alaska v. Express Scripts, Inc.*, No. 23-00233, 2024 WL 2321210, at *6–7 (D. Alaska May 22, 2024) (assessing the exemption on a motion to dismiss). Rather, the pertinent question is whether the exemption is evident from the face of the Complaint. Here, it is. Lilly's basis to allege Empower's compounded medications violate UTPCA is Empower's alleged failures to "conduct preclinical trials," to file "any application seeking approval," and to demonstrate its medications are "safe and effective." ECF 1 ¶¶ 162-165. Lilly claims these failures violate ALASKA STAT. § 17.20.110(a), which requires an application for the "new drug" to be effective under the federal act. But as Lilly extensively pleaded, new drug approval is highly regulated (ECF 1 ¶¶ 26-38), demonstrating that the specific conduct complained of is subject "to ongoing, careful regulation." *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019). And, as Lilly has also pleaded, Empower's alleged failure to obtain new drug approval for its compounded medications violates ALASKA STAT. § 17.20.110(a). Lilly pleaded itself into the exemption and dismissal is warranted.

### 3.     North Carolina's Learned Profession Exemption Applies

Because Lilly concedes that the learned profession exemption applies to pharmacies like Empower (ECF 49 at 16), Lilly opposition attempts to avoid the exemption by relabeling

Empower's pharmacy services as "manufacturing." *Id.*; *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 334 (N.C. 2019) (the learned profession exemption has two prongs: "first, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services"). But Lilly's argument in its brief is untethered to Lilly's Complaint; the crux of Lilly's entire claim is that Empower failed to comply with **pharmacy** regulatory requirements, allegedly transforming Empower into a drug manufacturer. ECF 1 ¶¶ 75-82 (alleging Empower failed to follow United States Pharmacopoeia standards, relating to the practice of compounding). The "specific conduct at issue" is whether Empower exercised its professional services in an appropriate manner, or if it failed to do so, converting it into a drug manufacturer.[5] Thus, the exemption attaches.

Further, Empower does not have the burden to prove compliance with compounding regulations to establish that the exemption applies. North Carolina courts frequently grant motions to dismiss based on the learned professional exemption following an evaluation of the nature of the conduct at issue in the Complaint, and without finding that the professional services rendered were appropriate. *See, e.g.*, *Sykes*, 372 N.C. at 329 (affirming dismissal of UDTPA claim because the learned professional exemption applied); *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, No. 20-00382, 2022 WL 1572732, *14 (W.D.N.C. Feb. 25, 2022) (granting motion to dismiss UDTPA claim because the learned professional exemption applied). Empower does not need to establish that it provided **compliant** professional services, just that the challenged conduct related to professional services. *Sykes*, 372 N.C. at 334 ("the conduct in question must be a rendering of professional services"). Empower is a member of a learned profession, and Lilly's allegations

---

[5] Strangely, Lilly cites to *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 418–20 (E.D. Pa. 2010) to support its claim that the exemption does not apply to drug manufacturers. The exemption, however, was not raised by the defendants and thus not considered by the court. The case is inapposite.

target professional pharmacy services. The exemption applies, and the NC UDTPA claim fails.

### 4.    Lilly's Texas Common Law Unfair Competition Claim Fails

As Empower set forth in its Motion (ECF 34 at 35-38), Lilly's Texas common law "unfair competition" claim fails for two reasons: (1) Empower's sale of compounded medications is lawful and authorized by its Texas sterile compounding license; and (2) Lilly does not have standing to enforce the Texas Food, Drug, Cosmetic Act ("TFDCA") to establish any predicate "illegal act."

#### a)    Empower's Compounded Medications Are Authorized

Lilly entirely ignores Empower's argument that Lilly's "unapproved drug" claim is implausible because Empower is licensed and authorized by the Texas State Board of Pharmacy to sell the very medications of which Lilly complains. ECF 34 at 36; *Cedra Pharmacy Houston, LLC v. UnitedHealth Grp., Inc.*, No. 17-3800, 2019 WL 1433600, at *12 (S.D. Tex. Mar. 7, 2019) (dismissing plaintiff's unfair competition claim because the alleged unlawful act was implausible), *R&R adopted*, 2019 WL 1426248 (S.D. Tex. Mar. 29, 2019), *aff'd sub nom. Cedra Pharmacy Houston, L.L.C. v. UnitedHealth Grp., Inc.*, 798 F. App'x 826 (5th Cir. 2020)). Lilly has not—and cannot—allege a single fact in its Complaint that converts Empower's lawful compounded medications into "unapproved drugs" under Texas law. Lilly does not even attempt to do so. Instead, Lilly claims that Empower's compounded medications are "unapproved drugs" under Texas law because Lilly says so. ECF 49 at 17. This is not sufficient to state a claim.

#### b)    Lilly Cannot Enforce the TFDCA

In addition to Empower's compounded medications being lawful, Lilly also lacks standing to enforce the TFDCA to show that Empower's compounded medications are "unapproved drugs." Therefore, Lilly cannot establish the "illegal act" necessary to state a claim. ECF 34 at 37-38. Lilly's Opposition sidesteps this dispositive issue, instead, retreating to the abstract proposition

that "a statutory violation could serve [as] the illegal act" to support an unfair competition claim. ECF 49 at 18 (citing *Decorative Ctr. of Houston, L.P. v. Direct Response Publications, Inc.*, 208 F. Supp. 2d 719, 735 n.32 (S.D. Tex. 2002)). But that general proposition is unsupported by Lilly's cited caselaw, and irrelevant to the specific question raised in Empower's Motion.

First, *Decorative Center* actually undercuts Lilly's proclamation. In the cited footnote, the court starts with the explicit statement that "[i]t is ***not clear*** that a statutory violation satisfies" the "illegal act" requirement. ECF 49 at 18 (citing *Decorative Ctr.*, 208 F. Supp. 2d at 735 n.32) (emphasis added). The district court's skepticism defeats the suggestion that Texas courts widely recognize statutory violations as appropriate predicates to the "illegal act" requirement. Further, even assuming that ***some*** statutory violations may satisfy the "illegal act" requirement in ***some*** contexts, that generalized possibility does nothing to establish that the TFDCA is one of them—especially given that the TFDCA contains no private right of action. Lilly identifies no Texas case—state or federal—in which a TFDCA violation served as the "illegal act" predicate for a Texas common-law unfair competition claim—for good reason, as no such case exists.

Further, contrary to Lilly's efforts to distinguish *Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo*, No. 04-02-00188, 2003 WL 21972724, at *3 (Tex. App.—San Antonio Aug. 20, 2003, pet. denied), Lilly's Texas claim is exactly what *Reliable* rejected: a private party seeking to enforce a carefully-crafted public enforcement framework through a catch-all "unfair competition" claim where legislature expressly created no private right of action. Instead, Lilly takes the position that implied rights of action are the rule, not the exception—claiming that *Reliable* held a "plaintiff can bring a claim premised on a statutory violation that interferes with its business, *unless* that claim would be "inconsistent with legislative intent" in the context of the particular statute." ECF 49 at 18. Not so. The controlling legal standard requires that the "existence of a private cause of

action must be clearly implied in the statutory text." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 431 (Tex. 2023).

Here, the Texas Legislature created a comprehensive statutory scheme that regulates food and drugs, and specifically provided for ***public*** enforcement of those provisions. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 431.054, § 431.0585, and § 431.059. The Texas Legislature is capable of providing private enforcement when it deems it appropriate. Nowhere in the TFDCA—a carefully-crafted public enforcement framework that *Reliable* found is incompatible with any implied right of action—is private enforcement recognized or even implied. *Tex. Med. Res., LLP.*, 659 S.W.3d at 431 (statutory text must clearly imply private cause of action). As the TFDCA contains no private right of action, and one should not be implied, Lilly cannot establish any "illegal act" to support its "unfair competition" claim. Lilly's Texas common law claim fails. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-905 (Tex. App.—Dallas 1989, writ denied) (absent "illegal act," no unfair competition claim).

## C.    <u>Lilly's False and Misleading Advertising Claims Fail</u>

Lilly's false and misleading advertising claims similarly fail.  First, Lilly lacks standing to bring such claims under the Lanham Act because it has not and cannot plead any direct injury. Second, Lilly's theories about safety/efficacy, personalization, and regulatory compliance are precluded by federal law. Third, Lilly has not plead Empower's statements are false or that any consumers were deceived by alleged misleading statements. Finally, many of the challenged statements are nonactionable puffery or opinion.

### 1.    <u>Lilly's Conclusory Allegations of Direct Injury Fail</u>

While Lilly's brief cites *Lexmark* heavily, it conveniently omits the controlling test *Lexmark* articulated for standing under the Lanham Act: a plaintiff must sufficiently allege "economic or reputational injury flowing ***directly*** from the deception wrought by the defendant's

advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (emphasis added). Because Lilly cannot meet this standard, it concocts a new (significantly watered down) one, in which standing lies anytime a plaintiff makes "classic" conclusory allegations that a party is a competitor that is luring away customers. ECF 49 at 20. But the law requires more, and Lilly's Complaint does not meet the *Lexmark* standard.

a)    *Lilly's Conclusory Statements of Reputational Harm Fail*

Lilly's attempt to articulate how Empower's advertisements harm Lilly's reputation perfectly illustrates that Lilly's theory is nothing more than far-fetched speculation without any well-pled facts in support. Under Lilly's concocted causation theory, it must allege—at the very least—that consumers had negative experiences with Empower's compounded tirzepatide products, and then that Empower's advertisements caused those same consumers to attribute the negative experience to Lilly, thereby damaging Lilly's reputation. Lilly does not allege any of this.

Lilly's Opposition boldly states "consumers have found that Empower's tirzepatide drugs do not work." ECF 49 at 25 (citing ECF 1 ¶¶ 94, 105, 111). But the cited paragraphs do not support that statement. At most, Lilly's Complaint cites a single TikTok user who muses that she is not sure the medication she received from Empower is working for her. ECF 1 ¶ 105 n.70; Decl. of Susan Dewey ("Dewey Decl."), **Ex. Q**. It is not reasonable to plausibly infer from this single musing that "consumers" have negative experiences with Empower's products. *Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-03534, 2025 WL 2998166, *3 (N.D. Cal. Oct. 24, 2025) (finding Lilly's similar allegations against Mochi unsupported by facts that "plausibly support an inference the compounded medication does not work as promised," and thus dismissing). Lilly alleges no negative experiences that could possibly be attributed **to Lilly** to cause reputational harm in the

first place.

Even if a single TikTok post could be enough, Lilly is still wrong to claim the Court can "reasonably infer" that any negative experiences with Empower would automatically harm Lilly's reputation. Empower's advertisements never mention Lilly's products, and no fact in the complaint alleges any consumer made such an attribution. It is telling that Lilly repeatedly cites to *Austin's Natural Frozen Pops, Inc. v. Jonny Pops, LLC*, to support its "reasonable inference" argument, ECF 49 at 26, which did not discuss reputational harm *at all*. No. 24-716, 2025 WL 888560, at *2 (W.D. Tex. Mar. 13, 2025) ("*Jonny Pops I*"). Even more, the consumer in the TikTok post specifically *disproves* Lilly's causation theory, stating she is using "the brand Empower" and thinks "this brand" may not work for her. **Ex. Q.** She never connects this to Lilly in any way. *Id.* The consumer is aware the product is not Lilly's; the allegation therefore "fails to support an inference that consumers in such a scenario would impute the negative effect to Lilly's product." *Mochi Health Corp.*, 2025 WL 2998166, *3. Lilly's claim must fail, just as it did in *Mochi* because "this lone allegation does not indicate Lilly suffered concrete injury." *Id.*[6]

Because Lilly pled no facts to support its concocted causation theory, its opposition brief tries to pivot, claiming it is enough for Lilly to merely allege that its product was equated to Empower's "inferior" product. This also fails. The Complaint does not reference a single Empower statement mentioning any of Lilly's products. Moreover, Lilly cites no facts whatsoever that Empower's products are actually inferior, as the *Mochi* court specifically found. 2025 WL 2998166, at *3. And Lilly's conclusory allegations that Empower's products pose a safety risk or "may not even work" cannot support any inference of inferiority where they are not supported by

---

[6] Although *Mochi* analyzed Lilly's reputational harm claim in the context of Article III standing, its analysis is equally applicable to Lanham Act standing—whether Lilly had "allege[d] a factual basis to support its conclusion that its reputation has been damaged by comparison to an inferior product." *Mochi Health Corp.*, 2025 WL 2998166, *3.

any well-pled facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also  Mike Vaugh Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 748 (E.D. Mich. 2014) (dismissing Lanham Act trade dress dilution claim where allegations were "conclusory").

Finally, *Crystaphase* is inapposite. There, the plaintiff alleged the relevant advertisement contained a photograph of its product, but the defendant allegedly filled orders with the defendant's product, which performed differently, without informing customers of the switch. *Crystaphase Products, Inc. v. Criterion Catalysts & Technologies, LP*, No. 17-00265, 2018 WL 4266237, *1 (S.D. Tex. Aug. 20, 2018).  Therefore, the plaintiff sufficiently alleged its reputation suffered because customers ***thought*** they had purchased the plaintiff's product, so it was reasonable to infer that customers would equate the plaintiff's product with the defendant's. *Id.* at *10. But the same is not true here: Lilly has not alleged Empower is claiming to sell Mounjaro® or Zepbound® but then providing compounded tirzepatide, without telling customers. Empower is selling its own compounded tirzepatide products without mentioning Lilly's products; nothing in the Complaint supports Lilly sustaining any "reputational injury flowing ***directly*** from" Empower's advertising of its own products. *Lexmark*, 572 U.S. at 133. As such, Lilly lacks Lanham Act standing.

### b)    *Lilly's Conclusory Statements of Lost Sales Fail*

Lilly seeks to minimize its failure to allege any reputational harm by reminding the Court its Lanham Act claim can go forward without it—so long as Lilly alleges lost sales. ECF 49 at 25. But Lilly has not sufficiently alleged lost sales flowing directly from Empower's advertisements, meaning its entire Lanham Act claim fails. Lilly claims that a single, conclusory legal conclusion in its Complaint that "[s]ome sales made by Empower of its compounded tirzepatide products

- 17 -

would have been made by Lilly but for Empower's unlawful and unfair competition" is enough. ECF 49 at 21 (citing ECF 1 ¶ 158). Not so. For one, the statement does not even mention Empower's advertisements. But more fundamentally, to avoid dismissal, a plaintiff must plead more than "the elements of a cause of action, supported by mere conclusory statements." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018).

### i. Doctors, Not Consumers, Choose Compounded Medications

Lilly claims its direct harm theory is based upon how "consumers sometimes choose Empower's compounded products over Lilly's due to [Empower's] false statements." ECF 49 at 21. But consumers do not choose whether they get Lilly's FDA-approved tirzepatide or Empower's compounded tirzepatide—doctors do. This is a fatal flaw in Lilly's theory. It means that the reasoning in cases like *Colorado Biolabs* and *Greater Houston Transportation*, in which a customer could see an advertisement and then independently choose to give their business to competitors instead of the plaintiffs, cannot apply. *Colo. Biolabs, Inc. v. Three Arrows Nutra, LLC*, No. 25-0601, 2025 WL 2524313 (N.D. Tex. Sept. 2, 2025); *Greater Hous. Transp. Co. v. Uber Techs. Inc., et al*, No. 14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015). Here, "regardless of what an advertisement says or what a consumer wants to buy, obtaining a prescription medication requires a physician to prescribe it." *Eli Lilly & Co. v. Willow Health Servs.,* No. 25-3570, 2025 WL 2631620, *6 (C.D. Cal. Aug. 29, 2025). Thus, "[a] physician prescribing a compounded medication is the proximate cause of a consumer/patient using compounded medication instead of Plaintiff's medication." *Id.* Lilly asks the Court to entirely dismiss the *Willow* court's finding as erroneous and completely ignore the physician's prescribing role in the compounding context just because this is not a products liability case. ECF 49 at 22-23. But the chain of events that must occur for a consumer to obtain a prescription medication are the same, regardless of the type of litigation related to the medication. No matter how much Lilly wishes it were not the case here, a

consumer **cannot** obtain a prescription medication, including Empower's compounded tirzepatide, without a physician making an independent clinical decision to prescribe it.

To support its "ignore how compounded drugs are obtained" argument, Lilly claims that this Court following *Willow* risks eliminating all Lanham Act claims for prescription drugs. ECF 49 at 22. This overexaggeration ignores how the doctor's prescribing function differs for compounded drugs. To prescribe a compounded medication, a physician must determine the commercially available mediation is inappropriate to treat the patient. 21 U.S.C. § 353a(a) (requiring a compounded drug be "based on the receipt of a valid prescription order … approved by the prescribing practitioner … that a compounded product is necessary for the identified patient"); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 361 (2002). Thus, any ruling in this case will have no impact on Lanham Act claims related solely to FDA-approved medications.

Additionally, while Lilly cites numerous cases where Lanham Act claims were maintained for prescription drugs, only *Eli Lilly & Co. v. Adonis Health, Inc.* addresses the argument that the provider's decision to prescribe the mediation breaks the chain of proximate cause. No. 25-3536, 2025 WL 2721684, at *4 (N.D. Cal. Sept. 24, 2025). But the *Adonis* court's analysis is cursory, summarily concluding that Lanham Act claims involving prescription drugs have proceeded before, so it must be fine here—which overlooks the prescribing differences for compounding. It also overlooks the reasoning in *Geomatrix, LLC, v. NSF Int'l*, which Lilly's briefing entirely ignores. 629 F. Supp. 3d 691, 709 (E.D. Mich. 2022), *aff'd* 82 F.4th 466 (6th Cir. 2023).

In *Geomatrix*, the plaintiff alleged the defendants made false statements about the effectiveness and environmental impact of the plaintiff's products, which allegedly resulted in state environmental regulators denying the plaintiffs' right to sell its products. *Id*. The Sixth Circuit affirmed the district court's conclusion, finding that the independent state regulators' decisions to

deny approval to plaintiff's products were the "intervening cause and the proximate one" of plaintiff's harm. *Id.* at 484. Thus, the plaintiff could not establish that "any deceptions on defendants' part was [] the cause of consumers' decisions, for consumers were not the ones that decided to do anything." *Id*. As such, plaintiff could not satisfy *Lexmark's* proximate cause analysis. *Id*. Here, the physician's prescribing decisions are the same as the state regulator's decision in *Geomatrix*. The *Willow* court's reasoning is consistent with *Geomatrix* and not erroneous. This Court should similarly find that Lilly has failed to sufficiently allege Empower's advertisements are the proximate cause of any consumer's decision to use compounded tirzepatide instead of Lilly's FDA-approved tirzepatide, and dismiss Lilly's Lanham Act claim.

### ii. Lilly Pled No Facts to Support Any Plausible Loss of Customers or Sales

Here again, Lilly claims its mere statement that Empower's practices have "lured customers away from Lilly" alone is enough to survive a motion to dismiss. ECF 49 at 25. It is not. In fact, *U.S. ex rel. Univ. Loft Co. v. Avteq, Inc.*, which Empower cited in its Motion and Lilly completely ignored, specifically rejected exactly this. No. 14-528, 2015 WL 13548950, *9 (W.D. Tex. Dec. 22, 2015), *R&R adopted*, 2016 WL 9461763 (W.D. Tex. Jan. 8, 2016) (finding plaintiff's allegation that a customer "might give additional consideration to a vendor" that represented itself with the alleged false statements was "insufficient to support an inference that the customer was lured away from awarding bids to plaintiff due to defendants' alleged false advertising").

Instead, Lilly needed to plead ***facts*** to support its conclusion that customers were "lured away," not just to establish standing under the *Lexmark* test, but to establish the fifth element of a Lanham Act claim—that the plaintiff has been or is likely to be injured as a result of the misrepresentation. For instance, in *Jonny Pops I*, a case Lilly cites heavily, the plaintiff alleged it lost retail space to the defendant and its sales declined by 25% when the defendant's products were

placed on the shelf next to the plaintiff's. 2025 WL 888560, *4. The court relied on these factual claims to find the plaintiff had sufficiently pled defendant's advertising caused plaintiff injury. *Id.*

Here, Lilly's Complaint alleged no such facts—nor could it. Indeed, Lilly told a different Texas federal district court that ***its*** drugs and compounded tirzepatide serve patients with different therapeutic needs. In the face of its contrary statement, Lilly cannot now argue (as it tries) that all it needs to do to establish standing is to claim that Empower and Lilly serve the same customer base. ECF 49 at 23-24. Even if the Court ignored Lilly's prior admission (ECF 34 at 18), Lilly must still plausibly allege—with facts—that Empower's own advertisements were ***a proximate cause*** of purported patient diversion. Because Lilly has not, it lacks standing under the Lanham Act, so it claims must be dismissed.

### 2.     All of Lilly's Lanham Act Theories Are Precluded

Independent of Lilly's failure to allege direct injury, all three of Lilly's Lanham Act theories—safety/effectiveness, personalization, and compliance—are precluded by federal law. ECF 34 at 24–25. In response, Lilly relies nearly entirely on *POM Wonderful LLC v. Coca-Cola Co.*, claiming the Supreme Court has rejected Empower's argument by holding that FDA oversight does not preclude Lanham Act claims. ECF 49 at 28, 29, 33 (citing 573 U.S. 102, 116-17 (2014)). Lilly overreads *Pom Wonderful*. While "Lanham Act suits in direct conflict with the agency's policy choice may still be precluded post-*POM Wonderful* … claims that directly implicate the FDA's rulemaking authority, are not binary factual determinations, or involve an issue on which the FDA has taken positive regulatory action are all likely precluded by the FDCA." *Allergan U.S. v. Imprimis Pharms., Inc.*, No. 17-1551, 2017 WL 10526121, *7 (C.D. Cal. Nov. 14, 2017)).

Each of Lilly's theories are precluded under *Pom Wonderful*:

- "***Compliance Theory***"—Lilly claims that Empower misrepresents its regulatory compliance. To resolve this, the Court must interpret the FDCA and determine whether Empower complies. This requires a non-binary determination squarely within FDA's

jurisdiction. *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1004 (C.D. Cal. 2014) ("[T]o resolve Par's Lanham Act claim based a factual allegation that the Defendants are falsely claiming to comply with the law while in fact selling illegal products, the Court must resolve an issue that Congress has placed within the jurisdiction of an administrative body having regulatory authority, under a comprehensive regulatory scheme.").

- "***Safety and Effectiveness Theory***"—Lilly claims that Empower falsely cites Lilly's safety and effectiveness data for the active pharmaceutical ingredient tirzepatide. To resolve this, the Court must determine whether studies about tirzepatide can be cited by compounders using tirzepatide. This is an open question which requires "FDA's particular expertise" and is therefore precluded. *Allergan U.S.*, 2017 WL 10526121, *7 (claims requiring FDA's particular expertise are precluded).

- "***Personalization Theory***"—Lilly claims that Empower misrepresents its compounded drugs as personalized because it does not compound medications individually. To resolve this, this Court would have to contradict § 503A and FDA's guidance, recognizing that compounders can make batches of medications.[7] *Allergan U.S.*, 2017 WL 10526121, *7 (claims upon which FDA has taken positive regulatory action are precluded).

Trying to overcome preclusion, Lilly cites *Adonis*. ECF 49 at 28, 34. But the *Adonis* court cited no Fifth Circuit cases. 2025 WL 2721684, *8-9. It did not have the benefit *Healthpoint, Ltd. v. Ethex Corp.*, explaining that terms "inextricably linked to the determination of whether [defendant's drug] is being marketed lawfully [is] a matter within the exclusive enforcement domain and peculiar expertise of the FDA." 273 F. Supp. 2d 817, 843-44 (W.D. Tex. 2001), *adopting relevant portion of R&R & rejecting other portions on other grounds*, 2001 WL 34897840, *4-5 (W.D. Tex. Aug. 3, 2001).[8] Lilly's theories are a veiled attempt to play FDA and are precluded.

---

[7] FDA, *Prescription Requirement Under Section 503A of the FDCA*, (Dec. 2016), p. 8, *available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/prescription-requirement-under-section-503a-federal-food-drug-and-cosmetic-act-guidance-industry. ECF 34, **Ex. A.**

[8] More critically, *Adonis* addressed preclusion only in the context of personalization theory; thus, *Adonis*'s reasoning is not applicable to Lilly's other theories here. Lilly did not bring regulatory compliance claims in *Adonis*. The court never reached the analysis of whether Lilly's or safety/efficacy theory was precluded because the court determined that theory failed on standing grounds. 2025 WL 2721684, *8-9. Notably, in rejecting Lilly's safety and efficacy theory (which Lilly admits were very similar to the claims it brings against Empower, and which Lilly ultimately chose not to try to re-file in *Adonis* after that court dismissed them without prejudice), the *Adonis* court found that "[a]ll Lilly contends is that [defendant's] advertising falsely implies that defendant's product claims were based on credible scientific proof, but these allegations are just conclusory and do nothing to support or prove the falsehood of the claims." *Id.* *7. Thus, should this Court follows *Adonis*, as Lilly urges, then Lilly's safety and efficacy theory fails.

3.    <u>Lilly Has Not Alleged Facts Showing Empower's Statements Are False</u>

Lilly's Lanham Act claim also fails because Lilly cannot meet the pleading standard merely by making a single conclusory allegation that Empower's "advertising statements are literally false." ECF 49 at 36. Lilly's own parenthetical acknowledges this, stating that a statement must be "***shown to be*** literally false." *Id.* (quoting *Boltex Mfg. v. Galperti, Inc.,* No. 17-1439, 2018 WL 1535199, *6 (S.D. Tex. Mar. 29, 2018) (emphasis added). Lilly must therefore allege facts that, if true, prove the false nature of the challenged statement. *Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*, No. 24-716, 2025 WL 3182084, *7–8 (W.D. Tex. Nov. 10, 2025) ("*Jonny Pops II*") (plaintiff did not "plead any facts supporting" defendants' use of a symbol was false or misleading).

Lilly complains that Empower falsely states it "adheres to stringent regulations," but the latest in time allegation Lilly cites is that Empower received a Warning Letter in April 2025. ECF 49 at 31. Lilly has not alleged Empower was out of compliance when Empower's statement was made. Lilly attempts to save its claim by arguing the statement is inherently "backwards-looking"—even though the past tense is not used—or the "implication" of the statement is that Empower has "at all times" been in regulatory compliance. ECF 49 at 30. But even if the Court accepted these meritless arguments, it does not establish Empower's statements were false.

Lilly also argues Empower's statements of safety and efficacy must be false because Empower did not conduct clinical trials or bioavailability studies of its products. ECF 1 ¶¶ 94, 100. But none of Lilly's allegations actually support or prove that Empower's products are unsafe or ineffective. Lilly even admits this, indicating it has no idea whether Empower's products work or not. *Id.* ¶ 99 (referring to Empower's products as "potentially ineffective"); ECF 49 at 27 (Empower's products "may not even work"). Thus, even accepting all of Lilly's factual allegations as true, no alleged fact would establish a falsity. *JHP Pharms., LLC*, 52 F. Supp. 3d at 1005

(dismissing Lanham Act claim where plaintiff "has not alleged any particular facts tending to prove the comparative safety of the various products involved"). Empower's motion to dismiss must be granted.

4.    Lilly's Conclusory Allegations of Confusion and Materiality Fail

If the Court determines Lilly sufficiently alleged Empower's statements are misleading, Lilly's claims still fail. To be actionable, misleading statements must actually deceive consumers. *Decorative Ctr. of Hous., L.P. v. Direct Response Publ'ns, Inc.,* 208 F. Supp. 2d 719, 727 (S.D. Tex. 2002). And Lilly's conclusory allegations stating Empowers statements "have the capacity to deceive" and are "likely to influence purchasing decisions" are not sufficient. ECF 49 at 36. Lilly cannot, as it claims, survive a motion to dismiss by just conclusorily reciting elements two and three of the Lanham Act. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Lilly must point to *facts* in the Complaint for each element, specifically pointing out how customers were materially deceived through the alleged misleading statement. *Photoprotective Techs. Inc. v. Relex, Inc.*, No. 10-067, 2010 WL 11601560, *5 (W.D. Tex. Dec. 9, 2010), *R&R adopted,* 2011 WL 13272695 (W.D. Tex. Jan. 5, 2011).

The three paragraphs in the Complaint Lilly cites are insufficient.[9] None of these allegations come close to alleging how consumers were materially deceived *by Empower's statements*. *Jonny Pops II*, 2025 WL 3182084, *6 (finding online reviews and comments by customers insufficient to support conclusory allegation of confusion because "they were not tied in any way to" the alleged misleading advertising). "In other words, [Lilly] alleges no facts to

---

[9] ECF 49 at 7 (citing ECF ¶ 98 (alleges healthcare provides repeated Empower's statements about safety and efficacy), ¶ 105 (alleges the consumer in the TikTok video discussed above states Empower's product might not work for her); ¶ 119 (alleges a consumer stated on Reddit she had to change pharmacies to obtain tirzepatide without niacinamide)).

support that consumers' purported confusion … has been caused or influenced by [Empower's] statements." *Id.* As such, even when assuming the truth of all the facts alleged by Lilly, it has still failed to state a Lanham Act claim and it must be dismissed.

### 5.    Empower's Statements Are Nonactionable Puffery

Lilly's safety and efficacy and personalization theories rely upon nonactionable puffery. Empower's statements that a routine is "easy" or "convenient" cannot be measured, unlike the dimensions of a vacuum can. ECF 49 at 40. They are non-quantifiable and depend upon a consumer's subjective interpretation. *Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, No. 15-10734, 2021 WL 1165087, *6 (N.D. Ill. Mar. 26, 2021) (statement "containers are 'designed for ease of use and increasing safety,' 'ideal for patient rooms and treatment areas,' and offer a solution to needlesticks" were puffery). Moreover, "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also Greater Hous. Transp. Co.*, 2015 WL 1034254, *11 (dismissing Lanham Act claims based on Uber's purported failure to comply with local ordinances because cease-and-desist letters from cities did not amount to "clear and unambiguous statements" from cities' regulatory agencies that defendants are in violation of local ordinance).

## III.    **CONCLUSION**

For the foregoing reasons, this Court should grant Empower's Motion to Dismiss, and dismiss Lilly's Complaint with prejudice.

Dated: December 15, 2025                    Respectfully submitted,

                                            BECK REDDEN LLP


                                            By:      /s/ Geoff A. Gannaway
                                                     Geoff A. Gannaway (*Attorney-in-Charge*)
                                                     Texas State Bar No. 24036617
                                                     Federal I.D. No. 37039
                                                     ggannaway@beckredden.com
                                                     David J. Beck
                                                     Texas Bar No. 00000070
                                                     Federal I.D. No. 16605
                                                     dbeck@beckredden.com
                                                     1221 McKinney Street, Suite 4500
                                                     Houston, Texas 77010
                                                     Telephone: (713) 951-3700
                                                     Facsimile: (713) 951-3720

                                            BLANK ROME LLP
                                            *A Pennsylvania LLP*

                                                     Shannon E. McClure (*Pro Hac Vice*)
                                                     Shannon.McClure@BlankRome.com
                                                     One Logan Square
                                                     130 N. 18th Street
                                                     Philadelphia, Pennsylvania 19103
                                                     Telephone: (215) 569-5586

                                                     Rachael Pontikes (*Pro Hac Vice*)
                                                     Rachael.Pontikes@BlankRome.com
                                                     444 West Lake Street, Suite 1650
                                                     Chicago, Illnois 60606
                                                     Phone: (312) 776-2587

                                            HYMAN, PHELPS & MCNAMARA, P.C.

                                                     Karla L. Palmer (*Pro Hac Vice*)
                                                     kpalmer@hpm.com
                                                     1101 K Street N.W., Suite 700
                                                     Washington, DC 20005
                                                     Telephone: (202) 737-7542

                                            ATTORNEYS FOR DEFENDANT
                                            EMPOWER CLINIC SERVICES, L.L.C. d/b/a
                                            EMPOWER PHARMACY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on this 15th day of December, 2025, via the Court's Electronic Filing System.

<u>*/s/ Geoff A. Gannaway*</u>