**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 4:25-cv-03464 |
| ) | |
| vs. ) | |
| ) | Complaint Filed: July 25, 2025 |
| EMPOWER CLINIC SERVICES, LLC D/B/A ) | |
| EMPOWER PHARMACY, ) | |
| ) | Judge: Honorable Sim Lake |
| Defendant. ) | Courtroom: [ ] |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFF ELI LILLY AND COMPANY'S OPPOSITION TO
DEFENDANT'S MOTION TO INVOKE FED. R. CIV. P. 7 TO REQUIRE A REPLY**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

NATURE OF THE PROCEEDING ................................................................................. 2

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................................... 3

ARGUMENTS AND AUTHORITIES ................................................................................ 5

I.   Empower Cannot Identify Substantial Reason For A Reply. ............................................. 5

II.  Lilly Has Adequately Alleged That Empower Sells Unapproved New Drugs ................... 8

III. Lilly Has Pled That Empower's Illegal Sales Violate State Unfair Competition Laws. ........................................................................................................................ 12

    A.   Empower's Illegal Sales Are Unfair. .................................................................... 13

        1.   Empower's illegal sales satisfy the multifactor unfairness test. ............... 13

        2.   Empower's illegal sales are per se unfair under Alaska, Colorado, and Tennessee law. ..................................................................... 16

    B.   Empower's Unfair Conduct Causes Lilly Harm. .................................................. 18

IV.  Empower's Violations Are Actionable ............................................................................ 20

CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Avery Dennison Corp. v. Kitsonas*,
   118 F. Supp. 2d 848 (S.D. Ohio 2000) ......................................................................18

*Blair v. United States*,
   164 F.2d 115 (5th Cir. 1947) ....................................................................................10

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341, 121 S. Ct. 1012 (2001).......................................................................22

*Bynum v. City of Magee*, No. 3:06CV639 TSL-JCS,
   2007 WL 913404 (S.D. Miss. Mar. 22, 2007) ...........................................................4

*Cedars N. Towers Pharmacy v. United States*,
   No. 77-4695-Civ-CA, 1978 U.S. Dist. LEXIS 15829 (S.D. Fla. Aug. 28, 1978) ...................11

*Cunningham v. Cornell University*,
   604 U.S. 693, 145 S. Ct. 1020 (2025)......................................................................4, 6

*Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536,
   2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ...............................................18, 19, 20

*Eli Lilly & Co. v. Aios, Inc.*, No. 25-cv-03535,
   2026 WL 836624 (N.D. Cal. Mar. 26, 2026).............................................................19

*Eli Lilly & Co. v. AP Max Inc. d/b/a Southend Pharmacy*,
   No. 4:24-cv-05051, ECF No. 47 (S.D. Tex. Apr. 17, 2026).....................................3, 6, 19, 20

*Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464,
   2026 WL 1162765 (S.D. Tex. Apr. 29, 2026) ..................................................... *passim*

*Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534,
   2026 WL 1076831 (N.D. Cal. Apr. 20, 2026) ....................................................19, 20

*Eli Lilly & Co. v. Revive Rx, LLC*,
   812 F. Supp. 3d 708 (S.D. Tex. 2025) ............................................................. *passim*

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   540 F. Supp. 2d 759 (S.D. Tex. 2007) ......................................................................4, 5

*F.T.C. v. Sperry & Hutchinson Co.*,
   405 U.S. 233, 92 S. Ct. 898 (1972)..................................................................13, 14, 16

*Fleming v. Hinds County*, No. 3:16-CV-554,
2017 WL 1730971 (S.D. Miss. May 1, 2017) ...........................................................................4

*Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK,
2010 WL 5313540 (D. Colo. Dec. 17, 2010)...........................................................................12

*Garner v. Morales*,
237 F.R.D. 399 (S.D. Tex. 2006)...............................................................................4, 7, 20

*Healthpoint Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR,
2008 WL 728333 (W.D. Tex. Mar. 18, 2008) ........................................................................20

*Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*, No.
219CV07748CASPLAX, 2021 WL 4963516 (C.D. Cal. Oct. 26, 2021), *rev'd on
other grounds*, No. 22-55173, 2023 WL 4758454 (9th Cir. July 26, 2023) ......................14, 18

*Illumina, Inc. v. FTC*,
88 F.4th 1036 (5th Cir. 2023) ...............................................................................................18

*Judeh v. La. State Univ. Sys.*, No. CIV.A. 12-1758,
2013 WL 1702052 (E.D. La. Apr. 18, 2013)............................................................................4

*Kebab Gyros, Inc. v. Riyad*, No. 3:09-0061,
2011 WL 1522343 (M.D. Tenn. Apr. 19, 2011).....................................................................18

*Maher v. AMAG Pharms., Inc.*, No. CV 20-152 (JXN) (JBC),
2024 WL 1376685 (D.N.J. Mar. 28, 2024)............................................................................15

*Med. Ctr. Pharmacy v. Mukasey*,
536 F.3d 383 (5th Cir. 2008) ........................................................................................1, 9, 10

*Nauful v. Navy Fed. Credit Union*, No. CV 3:23-2357-MGL,
2023 WL 12204768 (D.S.C. Oct. 19, 2023) ..........................................................................13

*Novo Nordisk A/S v. Ikon Health LLC*,
2026 WL 196475 (E.D. Wash. Jan. 26, 2026).................................................................19, 20

*Novo Nordisk, Inc. v. DCA Pharmacy*,
745 F. Supp. 3d 626 (M.D. Tenn. 2024).................................................................................19

*Patane v. Nestle Waters N. Am., Inc.*,
478 F. Supp. 3d 318 (D. Conn. 2020)..........................................................................2, 20, 21

*Profs. & Patients for Customized Care v. Shalala*,
847 F. Supp. 1359 (S.D. Tex. 1994), *aff'd*, 56 F.3d 592 (5th Cir. 1995) ................................9

*Strubel v. Hartford Ins. of the Midwest*, No. 809CV01858T17TBM,
2010 WL 11507830 (M.D. Fla. June 18, 2010)........................................................................4

iii

*Telebrands Corp. v. VindEx Sols. LLC*, No. 21-CV-00898-BLF,
2022 WL 1062051 (N.D. Cal. Apr. 8, 2022) ..........................................................17

*Thompson v. W. States Med Ctr.*,
535 U.S. 357, 122 S. Ct. 1497 (2002)...................................................................10

*Truvia v. Julien*,
187 F. App'x 346 (5th Cir. 2006) ........................................................................4, 6

*United States v. Baxter Healthcare Corp.*,
712 F. Supp. 1352 (N.D. Ill. 1989), *aff'd*, 901 F.2d 1401 (7th Cir. 1990) .............11

*United States v. RCS Corp.*,
366 F. Supp. 2d 332 (D.S.C. 2005)........................................................................23

*United States v. Scroggins*,
599 F.3d 433 (5th Cir. 2010) ..................................................................................9

*United States v. Sene X Eleemosynary Corporation*,
479 F. Supp. 970 (S.D. Fla. 1979) ........................................................................11

*Verizon Emp. Benefits Comm. v. Fitzgerald*, No. 3:06-CV-0482-D,
2007 WL 2080004 (N.D. Tex. July 12, 2007)..........................................................4

*Wilson v. Barcella*, No. CIV.A.K-05-3646,
2007 WL 963977 (S.D. Tex. Mar. 29, 2007), *aff'd*, 284 F. App'x 210 (5th Cir.
2008) .................................................................................................................4, 6, 7

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*,
134 F.4th 326 (5th Cir. 2025) ....................................................................... *passim*

**State Cases**

*Alaska Tr., LLC v. Ambridge*,
372 P.3d 207 (Alaska 2016)..................................................................................13

*ATS Se., Inc. v. Carrier Corp.*,
18 S.W.3d 626 (Tenn. 2000)..................................................................................23

*Best Place, Inc. v. Penn Am. Ins. Co.*,
920 P.2d 334 (Haw. 1996)......................................................................................22

*Est. of Carr ex rel. Bolton v. Circle S Enters., Inc.*,
664 S.E.2d 83 (S.C. Ct. App. 2008)......................................................................12

*Cheshire Mortg. Serv., Inc. v. Montes*,
612 A.2d 1130 (Conn. 1992) .................................................................................14

*Crowe v. Tull*,
     126 P.3d 196 (Colo. 2006) *(en banc)*....................................................................12, 22

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
     869 S.E.2d 34 (N.C. App. 2022)...........................................................................15

*Davis v. Four Seasons Hotel Ltd.*,
     228 P.3d 303 (Haw. 2010) ....................................................................................23

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,
     391 P.3d 582 (Wash. App. 2017)...........................................................................12

*Donahue v. Ledgends, Inc.*,
     331 P.3d 342 (Alaska 2014)..................................................................................23

*Drouillard v. Keister Williams Newspaper Servs.*,
     423 S.E.2d 324 (N.C. App. 1992)..........................................................................14

*Eder Bros. v. Wine Merchs. of Conn., Inc.*,
     880 A.2d 138 (Conn. 2005) .............................................................................21, 23

*Ellis v. Smith-Broadhurst, Inc.*,
     268 S.E.2d 271 (N.C. App. 1980)..........................................................................21

*Field, Tr. of Est. of Aloha Sports Inc. v. N.C.A.A.*,
     431 P.3d 735 (Haw. 2018) ....................................................................................12

*Greenberg v. Amazon.com, Inc.*,
     553 P.3d 626 (Wash. 2024)..............................................................................12, 13

*HAJMM Co. v. House of Raeford Farms, Inc.*,
     403 S.E.2d 483 (N.C. 1991)..............................................................................15, 23

*Hall v. Walter*,
     969 P.2d 224 (Colo. 1998)....................................................................................23

*Hungate v. L. Off. of David B. Rosen*,
     391 P.3d 1 (Haw. 2017), *abrogated on other grounds by Shikada*, 526 P.3d 395 ..................14

*Johnson v. Ford*, No. E2011-00486-COA-R3CV,
     2012 WL 1253269 (Tenn. Ct. App. Apr. 12, 2012)................................................12

*Johnson v. Phoenix Mut. Life Ins.*,
     266 S.E.2d 610 (N.C. 1980), *overruled on other grounds by Myers & Chapman,
     Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988) ...................................12

*Kavorkian v. Tommy's Elbow Room, Inc.*,
     711 P.2d 521 (Alaska 1985)..................................................................................12

v

*Kenai Chrysler Center, Inc. v. Denison*,
 167 P.3d 1240 (Alaska 2007).......................................................................................12

*Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*,
 124 A.3d 847 (Conn. 2015) .........................................................................................12

*Macomber v. Travelers Prop. & Cas. Corp.*,
 804 A.2d 180 (Conn. 2002) .........................................................................................21

*Maybank v. BB&T Corp.*,
 787 S.E.2d 498 (S.C. 2016) .........................................................................................12

*Merdes & Merdes, P.C. v. Leisnoi, Inc.*,
 410 P.3d 398 (Alaska 2017)...................................................................................13, 14

*Morrison v. Allen*,
 338 S.W.3d 417 (Tenn. 2011).......................................................................................13

*Myint v. Allstate Ins. Co.*,
 970 S.W.2d 920 (Tenn. 1998)..................................................................................20, 21

*Rush v. Blackburn*,
 361 P.3d 217 (Wash. Ct. App. 2015)............................................................................14

*State ex rel. Shikada v. Bristol-Myers Squibb Co.*,
 526 P.3d 395 (Haw. 2023) ..............................................................................13, 14, 15

*Showpiece Homes Corp. v. Assurance Co. of Am.*,
 38 P.3d 47 (Colo. 2001) (*en banc*)..............................................................................20

*State v. Abella*,
 454 P.3d 482 (Haw. 2019) ...........................................................................................12

*Stevenson Lumber Co.–Suffield v. Chase Assocs., Inc.*,
 932 A.2d 401 (Conn. 2007) .........................................................................................12

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*,
 620 S.E.2d 222 (N.C. App. 2005).................................................................................12

*Tucker v. Sierra Builders*,
 180 S.W.3d 109 (Tenn. Ct. App. 2005).........................................................................12

*Ulbrich v. Groth*,
 78 A.3d 76 (Conn. 2013) ..........................................................................................2, 13

*Walker v. Fleetwood Homes of N.C., Inc.*,
 653 S.E.2d 393 (N.C. 2007).........................................................................................13

*Walter v. Hall*,
    940 P.2d 991 (Colo. Ct. App. 1996) ......................................................................17

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*,
    858 P.2d 1054 (Wash. 1993)..................................................................................23

**Federal Statutes**

21 U.S.C. § 321(p)(1) ......................................................................................................9

21 U.S.C. § 355(a) ........................................................................................................17

**State Statutes and Codes**

Alaska Stat. Ann. § 17.20.110(a)....................................................................................9

Alaska Stat. § 17.20.110(a)(2) ......................................................................................17

Alaska Stat. § 17.20.230 ...............................................................................................21

Alaska Stat. § 17.20.315 ...............................................................................................21

Alaska Stat. § 17.20.365 ...............................................................................................21

Alaska Stat. § 45.50.471(b)(3)......................................................................................17

Alaska Stat. § 45.50.471(b)(4).......................................................................................17

Alaska Stat. § 45.50.471(b)(6)......................................................................................17

Alaska Stat. § 45.50.471(b)(48).....................................................................................16

Colo. Rev. Stat. § 6-1-105(1)(z) ...................................................................................17

Colo. Rev. Stat. § 12-280-108(4)..................................................................................21

Colo. Rev. Stat. § 12-280-129 ......................................................................................21

Colo. Rev. Stat. § 12-280-131(1)...........................................................................9, 11, 17

Conn. Gen. Stat. Ann. § 21a-110(a).........................................................................9, 11

Conn. Gen. Stat. Ann. § 21a-110(b) .............................................................................11

Conn. Gen. Stat. § 21a-95.............................................................................................21

Conn. Gen. Stat. § 21a-96.............................................................................................21

Haw. Rev. Stat. § 328-17(a)(1)......................................................................................11

Haw. Rev. Stat. § 328-17(a)(2) ...............................................................................11

Haw. Rev. Stat. § 328-25(b) ...................................................................................21

Haw. Rev. Stat. § 328-26 ........................................................................................21

Haw. Rev. Stat. § 328-29(a) ....................................................................................21

N.C. Gen. Stat. § 75-1.1 ..........................................................................................14

N.C. Gen. Stat. Ann. § 106-121(12)(a) .....................................................................9

N.C. Gen. Stat. Ann. § 106-135 ..............................................................................11

N.C. Gen. Stat. § 106-124.1(a) ...............................................................................21

N.C. Gen. Stat. § 106-125 .......................................................................................21

S.C. Code Ann. § 39-23-70 ......................................................................................11

S.C. Code § 39-23-80(b) ..........................................................................................21

S.C. Code § 39-23-130 .............................................................................................21

Tenn. Code Ann. § 53-1-102(28)(a) ..........................................................................9

Tenn. Code Ann. § 53-1-110 ....................................................................................11

Tenn. Code § 40-35-111(e)(3) ..................................................................................21

Tenn. Code § 47-18-104(b)(73) ................................................................................18

Tenn. Code § 53-1-103(b) .........................................................................................21

Tenn. Code § 53-1-110(a) .........................................................................................18

Tenn. Code § 53-1-201 .............................................................................................21

Tex. Health & Safety Code Ann. § 431.114(a) ........................................................11

Wash. Rev. Code § 69.04.018 ....................................................................................9

Wash. Rev. Code § 69.04.110 ..................................................................................21

Wash. Rev. Code § 69.04.570 ..................................................................................11

**Rules**

Federal Rule of Civil Procedure 7 ...................................................................... *passim*

**Regulations**

21 C.F.R. § 201.120(c) (Mar. 27, 1975) ...............................................................10, 11

17 Fed. Reg. 6818–01 (July 25, 1952)..........................................................................10

**Other Authorities**

Brief for the United States, *Wells Pharma of Houston, L.L.C. v. Zyla Life Sciences,*
    *L.L.C.*,
    No. 25-257 (May 27, 2026) .................................................................................10

5 Wright & Miller, Federal Practice & Procedure § 1185 (4th ed.) ...............................3

## INTRODUCTION AND SUMMARY OF ARGUMENT

Empower moves to require a reply to its Answer, an ordinarily improper and unnecessary step that must be justified by a substantial reason. Empower does not and cannot identify any convincing reason. It instead tries to relitigate issues it lost in its motion to dismiss, and raise new arguments this Court and the Fifth Circuit have already rejected and Empower considered too weak for its dismissal motion. Those arguments misstate the law and Lilly's allegations and do not justify a reply. The efficient next step in this case is discovery into the contested fact issues, not more pleadings.

Empower's lead argument is that its "compounded medicines dispensed pursuant to prescription fall outside the reach of [state] new drug statutes." ECF No. 82 ("Mot.") at 6. But what Empower dispenses, how it dispenses it, and how its business operates are all disputed facts that require discovery to resolve, not more pleadings. Lilly has repeatedly alleged that Empower "fails to follow pharmacy compounding standards," including by "fail[ing] to obtain necessary prescriptions"—as this Court has recognized. ECF No. 1 ("Compl.") ¶¶ 81–82; *Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. CV H-25-3464, 2026 WL 1162765, at *17 (S.D. Tex. Apr. 29, 2026) ("Lilly alleges that Empower is not engaged in compounding pharmaceuticals."). And Empower's argument is also wrong on the law: the Fifth Circuit has already held that compounded drugs *are* new drugs, governed by premarket approval requirements. *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 395 (5th Cir. 2008) (an "individualized concoction created by a compounding pharmacist" is "a 'new drug.'").

Empower next contends that Lilly has not stated an unfair competition claim because Empower's conduct is not unfair, Mot. at 7, and because Lilly cannot show a "causal link between the alleged unfair conduct and harm," *id*. at 9. Although it could have made those arguments in its previous motion to dismiss, it did not, and for good reason. The Fifth Circuit has squarely rejected

both contentions: "If anyone sells drugs in violation of [state 'new drug'] laws, competitors may bring suit under traditional state unfair-competition law." *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 331 (5th Cir. 2025). Even setting that authority aside, Empower's illegal mass-production and sale of untested drugs expose patients to serious health risks, offend public policy, and cause substantial injury to consumers and competitors. Any *one* of those factors independently establishes the unfairness of its conduct. *E.g.*, *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013). And because Empower is unlawfully selling a knockoff drug that directly competes with Lilly's medicines, it directly causes Lilly financial harm. *E.g.*, Compl. ¶¶ 14, 158.

Finally, Empower argues that Lilly lacks a cause of action because state FDCAs do not provide a private right of action. Mot. at 8, 10, 13. That argument is a red herring. Lilly brought "suit under traditional state unfair-competition law," *Zyla*, 134 F.4th at 331—not under state FDCAs. As courts regularly hold, plaintiffs "may predicate a[n unfair competition] claim on violations of statutes or regulations that themselves do not allow for private enforcement." *Patane v. Nestle Waters N. Am., Inc.*, 478 F. Supp. 3d 318, 328 (D. Conn. 2020). In short, none of Empower's arguments comes close to warranting the extraordinary relief it seeks.

### NATURE OF THE PROCEEDING

Lilly is an international medicine company that provides life-changing medicines, including Mounjaro® and Zepbound®, the only two FDA-approved medicines containing the macromolecule Lilly discovered—tirzepatide. *See* Compl. ¶¶ 65, 69–71. Empower sells knockoff tirzepatide products, which are not FDA-approved, and therefore are unapproved new drugs under the laws of Alaska, Colorado, Connecticut, Hawaii, North Carolina, South Carolina, Tennessee, Texas, and Washington. *See id.* ¶¶ 5, 40–49.

Lilly challenged Empower's illegal sale of unapproved new drugs as a violation of state unfair competition statutes. *See generally* Compl. This is Empower's second attempt to dismiss those claims. In its first, Empower advanced two theories for disposing of Lilly's state law claims: (1) that they were preempted by Section 337(a) of the federal Food, Drug, and Cosmetics Act; and (2) that various state regulatory exemptions or safe harbors shielded its conduct. *See* ECF No. 34 at 31–35, 38–40. This Court rejected both. *See Empower*, 2026 WL 1162765, at *9–11 (rejecting preemption); *id.* at *14–19 (rejecting exemption-based arguments). The Court recognized that Empower was impermissibly asserting as fact the very thing that Lilly's Complaint disputes—that Empower lawfully dispenses compounded drugs rather than unapproved new drugs—and that such assertions cannot be resolved at the pleading stage because the court cannot "draw factual inferences in" the defendant's favor. *See id.* at *11, 19 (citing *Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 331 n.2 (5th Cir. 2025)). The Court's decision aligned with controlling Fifth Circuit precedent, and with the decisions of the other district courts that have considered identical claims. *See Zyla*, 134 F.4th at 331 n.2; *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 737, 750 (S.D. Tex. 2025) (citing *Zyla*); Order, ECF No. 47, *Eli Lilly & Co. v. AP Max Inc. d/b/a Southend Pharmacy*, No. 4:24-cv-05051 (S.D. Tex. Apr. 17, 2026).

Empower then filed this motion seeking a reply to its Answer, under Federal Rule of Civil Procedure 7(a). But Empower's motion does not name a single paragraph of its Answer to which it believes Lilly should reply. Instead, it repackages dismissal arguments this Court already rejected.

**STATEMENT OF THE ISSUES AND STANDARD OF REVIEW**

"[O]rdinarily," replying to an answer is "unnecessary and improper." 5 Wright & Miller, Federal Practice & Procedure § 1185 (4th ed.). Replies "typically do not enhance the efficiency of the litigation," and movants seeking a reply to an answer therefore face a "strict standard" that is

3

"difficult to satisfy." *Garner v. Morales*, 237 F.R.D. 399, 400 (S.D. Tex. 2006); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 795 (S.D. Tex. 2007). Thus, courts do not grant Rule 7 motions to require a reply unless the movant has identified a "substantial reason" or a "necessity … to justify the court ordering a reply to [its] answer," such as the need to "screen out" a "meritless," "barebones" claim. *Enron Corp.*, 540 F. Supp. 2d at 795; *Cunningham v. Cornell University*, 604 U.S. 693, 708, 145 S. Ct. 1020, 1031 (2025); *see also, e.g.*, *Strubel v. Hartford Ins. Co. of the Midwest*, No. 809CV01858T17TBM, 2010 WL 11507830, at \*2 (M.D. Fla. June 18, 2010) (requiring a "clear and convincing factual showing of necessity or other extraordinary circumstances of compelling nature").

The assertion of an affirmative defense does not meet that standard unless replying "would facilitate the resolution of the dispute." *Verizon Emp. Benefits Comm. v. Fitzgerald*, No. 3:06-CV-0482-D, 2007 WL 2080004, at \*4 (N.D. Tex. July 12, 2007) ("An affirmative defense in the answer ordinarily does not call for a reply."). And where "the briefing in response to the motions to dismiss … adequately addresses [the] issues, a district court need not require a Rule 7 response." *Wilson v. Barcella,* No. CIV.A.K-05-3646, 2007 WL 963977, at \*11 (S.D. Tex. Mar. 29, 2007), *aff'd*, 284 F. App'x 210 (5th Cir. 2008) (declining to order a Rule 7 reply); *see also Truvia v. Julien*, 187 F. App'x 346, 349–50 (5th Cir. 2006) (affirming denial of Rule 7 reply where defense was raised in prior 12(b)(6) motion); *Judeh v. Louisiana State Univ. Sys.*, No. CIV.A. 12-1758, 2013 WL 1702052, at \*8 (E.D. La. Apr. 18, 2013) (no Rule 7 reply required where defense adequately raised in prior motion to dismiss and "plaintiff's complaint was very specific" on the issue); *Fleming v. Hinds Cnty.*, No. 3:16CV554TSL-RHW, 2017 WL 1730971, at \*2 (S.D. Miss. May 1, 2017) (same); *Bynum v. City of Magee, Mississippi*, No. 3:06CV639 TSL-JCS, 2007 WL 913404, at \*1

(S.D. Miss. Mar. 22, 2007) (no Rule 7 reply required because plaintiff could respond in opposition to motion to dismiss).

The Court must decide whether Empower has identified a "substantial reason" or a "necessity … to justify the court ordering a reply to [its] answer." It has not. *Enron Corp.*, 540 F. Supp. 2d at 795.

**ARGUMENTS AND AUTHORITIES**

**I.     EMPOWER CANNOT IDENTIFY SUBSTANTIAL REASON FOR A REPLY.**

Empower does not meet Rule 7(a)(7)'s "difficult to satisfy" standard because it fails to point to any "necessity" justifying a reply. *See In re Enron Corp.*, 540 F. Supp. 2d at 795. Indeed, Empower does not cite a single paragraph of its Answer that requires a reply, or explain what a reply would add to the existing pleadings. To the contrary, Empower's proposal would do nothing to resolve disputed questions of law, and would instead inefficiently relitigate matters already decided by the Court to further delay discovery.

Empower claims Lilly should be required to reply, "in light of Empower's affirmative defenses," Mot. at 2, but the vast majority of Empower's motion has nothing to do with its affirmative defenses. Instead, Empower repeatedly argues that Lilly "fails to allege" its claims, contending its conduct is not illegal or actionable, does not "meet … standards for establishing unfair competition," and did not cause Lilly's harm. *Id.* at 3, 6–9. But Empower has already tried and failed to show that "Lilly cannot state a claim." *See* ECF No. 34 at 30–34; *Empower*, 2026 WL 1162765, at *1 (denying Empower's motion to dismiss). Its request to do so again is not an appropriate basis for a Rule 7 motion.

Empower points to just one affirmative defense—that Empower's conduct falls within "regulatory exemptions." But "[a]n affirmative defense in the answer ordinarily does not call for a reply." *Fitzgerald*, 2007 WL 2080004, at *4. The Supreme Court has encouraged the use of a

5

reply only to address "barebones … suits" by "screen[ing] out meritless claims." *Cunningham*, 604 U.S. at 708. Lilly's Complaint, meticulously detailing Empower's regulatory violations, is far from "barebones." *See, e.g.*, Compl. ¶¶ 122–56. And this Court, the Fifth Circuit, and other courts in this Circuit have repeatedly found claims like Lilly's have merit. *Empower*, 2026 WL 1162765, at *9–11; *Zyla*, 134 F.4th at 331 n.2; *Revive Rx,* 812 F. Supp. 3d at 737; Order, ECF No. 47, *Southend Pharmacy*, No. 4:24-cv-05051 (S.D. Tex. Apr. 17, 2026).

In any case, Empower's affirmative defense has already been "fully addressed" through Lilly's Complaint and the parties' prior briefing, making a reply "unnecessary." *Wilson*, 2007 WL 963977, at *11; *see also Truvia*, 187 F. App'x at 349–50 ("[r]equiring a Rule 7(a) reply in addition to the completed [Rule 12(b)(6)] briefing would be redundant"). Empower's defense is that each relevant state statute "exclude[s] from liability conduct authorized by regulatory bodies." Mot. at 7–8. But Empower already pressed exactly that theory in its motion to dismiss—arguing that "conduct that is permitted by regulatory agencies cannot form the basis of an unfair competition or deceptive practice claim" and that Lilly had "pleaded itself into the exemption." ECF No. 34 at 31; ECF No. 53 at 9. Lilly responded that the exemptions are affirmative defenses on which Empower bears the burden of proof. ECF No. 49 at 10–19. The Court agreed, holding that Empower's "arguments do not justify relief on a Rule 12(b)(6) motion to dismiss because—as the parties concede—each state's exemption constitutes an affirmative defense that Empower is required to plead and *prove*." *Empower*, 2026 WL 1162765, at *19 (citing *Zyla*, 134 F.4th at 331 n.2) (a defendant "cannot have *proven* that it satisfies" the requirements for authorized compounding on the pleadings) (emphasis added); *see also Cunningham*, 604 U.S. at 702 (statutory exemptions "must be pleaded *and proved* by the defendant") (emphasis added).

6

Moreover, Lilly's Complaint already alleges Empower's *non-compliance* with these state regulatory exemptions in detail—explaining, for example, that Empower does *not* obtain necessary prescriptions, fails to follow USP standards, and uses impermissibly substandard ingredients. Compl. ¶ 81. Empower's Answer adds nothing to the dispute, simply asserting that Empower "conducts its compounding and dispensing activities in compliance" with the relevant laws. *See, e.g.*, Answer at 47. Since Lilly has already alleged and argued in detail that it does not, a reply is "unnecessary." *Wilson*, 2007 WL 963977, at *11. With both parties having pled their positions on Empower's defense, a reply would not advance the pleadings. Instead, the parties are now proceeding to discovery, where Empower will be put to its proof.

Empower also asks this Court to order a reply simply because the *Revive* court did, reasoning that because the "portion of *Revive Rx* that this Court cited [in its prior decision] required Lilly to file a reply," the Court should "take the same procedural step as in *Revive Rx*." Mot. at 1. Empower misstates the *Revive* ruling. The *Revive* court only ordered a reply to *two* specific defenses—Alaska's safe harbor and North Carolina's learned-profession exemption, 812 F. Supp. 3d at 737, 750—not the broad, amorphous reply Empower requests.[1] For the vast majority of claims, the *Revive* court required no reply at all, because Lilly had "plausibly" pled that the defendant transgressed the conditions under which compounding was "specifically permitted by law." *Revive*, 812 F. Supp. 3d at 737, 743, 747–48. And the *Revive* reply ultimately did not "enhance the efficiency of the litigation." *Garner*, 237 F.R.D. at 400. Although the defendant in *Revive* moved for judgment on the pleadings following Lilly's reply, its motion did not rely on the

---

[1] Empower explicitly does not seek a reply on the North Carolina learned profession argument, like the one *Revive* ordered. Mot. at 14–15 ("The present Motion does not renew the 'learned profession' argument."). For good reason: this Court already held that "the conduct at the heart of this action is not sufficiently related to the provision of patient care to fall within the … 'learned profession' of pharmacy." *Empower*, 2026 WL 1162765, at *17.

7

reply, but instead asked the Court to disregard it. *Eli Lilly & Co. v. Revive Rx, LLC*, No. 4:23-cv-03521 (S.D. Tex. Apr. 10, 2026), ECF No. 108 at 14–15.

Empower does not identify any need for a reply, and the Court can deny its motion on that ground alone.

## II. LILLY HAS ADEQUATELY ALLEGED THAT EMPOWER SELLS UNAPPROVED NEW DRUGS.

Empower's lead argument is that "compounded medicines dispensed pursuant to prescription fall outside the reach of [state] new drug statutes," and therefore Lilly's "theory is wrong as a matter of law." Mot. at 6. Again, this argument does not identify any need for a reply. Instead, it contests Lilly's factual allegations, which should be addressed by discovery, and belatedly disputes Lilly's interpretation of the law when it could have done that in its motion to dismiss. Regardless, Empower's argument is flatly wrong for two independent reasons: Empower cannot show that it is lawfully dispensing compounded medicines pursuant to prescription at the pleadings stage, or that compounded medicines are not "new drugs" under both state and federal law. *Id. First*, Lilly explicitly alleged that "Empower is *not* 'compounding'" and that it "fails to obtain necessary prescriptions." Compl. ¶¶ 1 (emphasis added), 8; *see also id*. ¶ 81 (describing how Empower "fails to follow pharmacy compounding standards"). This Court has already recognized that "Lilly alleges that Empower is not engaged in compounding pharmaceuticals." *Empower*, 2026 WL 1162765, at *17. Empower may claim otherwise, but that is a factual issue that must wait for discovery. There is no reason for Lilly to restate those allegations in a reply.

*Second*, Empower's claim that "compounded medicines … fall outside the reach of … new drug statutes" is foreclosed by the statutes' plain text and Fifth Circuit precedent. Mot. at 6. Under federal and state law, "[t]he term 'new drug' means … *[a]ny drug* … which … is not generally

8

recognized … as safe and effective." 21 U.S.C. § 321(p)(1) (emphasis added).[2] "Any drug" plainly includes compounded drugs. The Fifth Circuit has therefore repeatedly held that an "individualized concoction created by a compounding pharmacist" is a "'new drug,'" because the definition turns "on the drug's composition and use rather than on the process by which it was created"—"it does not matter that the substance has been created through compounding rather than manufacturing." *Med. Ctr.*, 536 F.3d at 395 (cleaned up); *see also Pros. & Patients for Customized Care v. Shalala*, 847 F. Supp. 1359, 1363 (S.D. Tex. 1994) ("compounded drugs are new drugs subject to the FDC Act"), *aff'd*, 56 F.3d 592, 593 n.3 (5th Cir. 1995) ("the [FDCA] does not expressly exempt 'pharmacies' or 'compounded drugs' from the new drug, adulteration, or misbranding provisions").

Empower tries to circumvent this clear law by arguing that there was a "roughly fifty-year period" in which "compounded medicines were universally excluded from" the federal definition of "new drug," and that the term was "transplanted" into state law during that period. Mot. at 6. That single-sentence argument is so undeveloped that the Court should deem it waived. *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (an argument "merely mention[ed] or allude[d] to" without development is waived).[3] The cases Empower cites—*Med. Ctr.* and *Zyla*— say the opposite. *Med. Ctr.* squarely holds that "any drug … the composition of which" has not been approved is a "new drug," even if "the substance has been created through compounding." 536 F.3d at 395. And *Zyla* explicitly *allows* "suit under traditional state unfair-competition law" against compounders for violations of state laws that "mak[e] it illegal to sell any new drug that

---

[2]     ALASKA STAT. ANN. § 17.20.110(a) (incorporating federal law); COLO. REV. STAT. § 12-280-131(1) (incorporating federal law); CONN. GEN. STAT. ANN. § 21a-110(a) (incorporating federal law); N.C. GEN. STAT. ANN. § 106-121(12)(a) (defining "new drug" as "[a]ny drug … which … is not generally recognized … as safe and effective"); TENN. CODE. ANN. § 53-1-102(28)(a) ("[a]ny drug … which … is not generally recognized … as safe for use"); WASH. REV. CODE § 69.04.018 (same).
[3]     Empower also lists four "canons of construction" that purportedly "foreclose Lilly's reading," but does not explain how any of them applies and therefore again waives the argument. Mot. at 6.

has not been approved." 134 F.4th at 330–31. It explains that the unapproved-drug prohibition in state FDCAs—identical to those at issue here—"mirror[] federal law," and are "identical [to federal law] in *all* relevant respects"—necessarily including the definition of "new drug." *Id.* at 332 (emphasis added); *see also* Brief for the United States at 8, *Wells Pharma of Houston, L.L.C. v. Zyla Life Sciences, L.L.C.*, No. 25-257 (May 27, 2026) (arguing, "[t]he [d]ecision [b]elow [i]s [c]orrect").

While Empower never says it, the "roughly fifty-year period" it refers to is that leading up to the 1997 amendment to the FDCA. *Compare* Mot. at 6 *with Eli Lilly & Co. v. Revive Rx, LLC*, No. 4:23-cv-03521 (S.D. Tex. Apr. 10, 2026), ECF No. 108 at 5. But the 1997 amendment did not change the "new drug" definition; it instead created a new exemption from the approval requirement—confirming that compounded drugs not generally recognized as safe and effective had been new drugs all along. *See, e.g.*, *Thompson v. W. States Med Ctr.*, 535 U.S. 357, 362–64, 122 S. Ct. 1497, 1501 (2002) (characterizing the general non-enforcement period preceding the FDAMA as an exercise of FDA's enforcement discretion, subsequently codified by Congress). For that reason, Section 503A, enacted with the 1997 amendments, "makes it easy" to conclude that "compounded drugs are in fact 'new drugs.'" *Med. Ctr.*, 536 F.3d at 400, 405; *see also Blair v. United States*, 164 F.2d 115, 118 n.5 (5th Cir. 1947) ("[I]t is 'a rule of interpretation, to which all assent, that the exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made.'") (quoting *Arnold, Constable & Co. v. United States*, 147 U.S. 494, 499, 13 S. Ct. 406, 408 (1893)).

Empower's argument also ignores decades of pre-1997 enforcement of new drug requirements against compounders. *See, e.g.*, 17 Fed. Reg. 6818-01 (July 25, 1952); 21 C.F.R.

10

§ 201.120(c) (Mar. 27, 1975) (declaring any drug ingredient misbranded if "intended for use in compounding which results in a new drug, unless an approved new-drug application covers such use"); *United States v. Sene X Eleemosynary Corp.*, 479 F. Supp. 970, 977 (S.D. Fla. 1979) (finding a compounded product to be a new drug because it was not generally recognized as safe and effective); *Cedars N. Towers Pharm., Inc. v. United States*, No. 77-4695-Civ-CA, 1978 U.S. Dist. LEXIS 15829, at *6 (S.D. Fla. Aug. 28, 1978) ("[b]ulk compounding of drugs" is "not the type of activity intended to be exempt" from new drug requirements); *United States v. Baxter Healthcare Corp.*, 712 F. Supp. 1352, 1356, 1360 (N.D. Ill. 1989), *aff'd*, 901 F.2d 1401 (7th Cir. 1990) (ruling compounded drugs were unapproved new drugs).

Empower's final point fares no better. Empower argues that because five state statutes "expressly exclude compounding from their definitions of 'manufacture,'" compounded medicines "fall outside the reach of [the states'] new drug statutes." Mot. at 6–7. This again improperly contests Lilly's allegation that "Empower is *not* 'compounding.'" Compl. ¶ 1. In any case, Empower cites no support for its proffered definition of "manufacture," and even if it had, the state new-drug statutes Lilly invokes prohibit *selling* or *distributing* unapproved new drugs.[4] Whether compounding qualifies as "manufacturing" is therefore beside the point. Lilly alleges that Empower illegally sells and distributes unapproved tirzepatide nationwide, Compl. ¶¶ 1, 8, 75–76, and no definition of manufacturing—had Empower bothered to cite one—would change that.

---

[4]    *See* Alaska Stat. Ann. §§ 17.20.110(a)(1)–(2); Colo. Rev. Stat. § 12-280-131(1); Conn. Gen. Stat. Ann. §§ 21a-110(a)–(b); Haw. Rev. Stat. §§ 328-17(a)(1)–(2); N.C. Gen. Stat. Ann. § 106-135; S.C. Code Ann. § 39-23-70; Tenn. Code Ann. § 53-1-110; Tex. Health & Safety Code Ann. § 431.114(a); R.C.W. § 69.04.570; *see also Zyla*, 134 F.4th at 332 n.3 (collecting materially identical state provisions).

11

**III.    LILLY HAS PLED THAT EMPOWER'S ILLEGAL SALES VIOLATE STATE UNFAIR COMPETITION LAWS.**

Empower next claims that Lilly has not stated a claim under state unfair competition law because Empower's illegal mass-manufacture and sale of unapproved tirzepatide products "do not constitute an 'unfair method of competition,'" Mot. at 7, and because Lilly cannot establish the "causal link between the alleged unfair conduct and harm" required by each state's laws, *id*. at 9. The Fifth Circuit and this Court have already rejected these arguments: "If anyone sells drugs in violation of" state new-drug laws, "competitors may bring suit under traditional state unfair-competition law." *Zyla*, 134 F.4th at 331; *Empower*, 2026 WL 1162765, a *19 ("Lilly's Complaint needs to—and does—allege that Empower violates state law.").

In any event, no Rule 7 reply is warranted because both unfairness[5] and causation[6] are factual questions, rarely resolvable on the pleadings, and because Lilly's allegations more than suffice to plead both elements. The next step is discovery, not more pleadings.

---

[5]    *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1256 (Alaska 2007) (unfair competition claims "focus on the unfairness of the disputed practice under the specific circumstances presented"); *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *4 (D. Colo. Dec. 17, 2010) (whether conduct violates CCPA "is a question of fact for the fact-finder"); *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 124 A.3d 847, 867 (Conn. 2015) ("[W]hether a practice is unfair and thus violates CUTPA is an issue of fact."); *Field, Tr. of Est. of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n*, 431 P.3d 735, 746 (Haw. 2018) ("[T]he evaluation of whether particular, non-statutorily-enumerated conduct is unfair is simply a question of fact."); *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 621 (N.C. 1980) ("What is an unfair or deceptive trade practice usually depends upon the facts of each case."), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) ("[W]hether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact."); *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 512–13 (S.C. 2016) (finding no error in "*the jury's* finding of a UTPA violation" (emphasis added)); *Greenberg*, 553 P.3d at 649 ("[W]hether an act or practice is unfair under the [WCPA] … is to be resolved by a jury.").

[6]    *Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521, 522 n.2 (Alaska 1985) ("causation" is "normally for the jury"); *Crowe v. Tull,* 126 P.3d 196, 210 (Colo. 2006) *(en banc)* ("Causation is a question of fact reserved for the jury[.]"); *Stevenson Lumber Co.–Suffield v. Chase Assocs., Inc.*, 932 A.2d 401, 407 (Conn. 2007) ("[C]ausation generally is a question reserved for the trier of fact[.]"); *State v. Abella*, 454 P.3d 482, 497 (Haw. 2019) ("Causation is a question of fact[.]"); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 620 S.E.2d 222, 232 (N.C. App. 2005) ("Under the UDTPA, proximate cause is a question of fact."); *Est. of Carr ex rel. Bolton v. Circle S Enters., Inc.*, 664 S.E.2d 83, 89 (S.C. Ct. App. 2008) (causation is for "the jury"); *Johnson v. Ford*, No. E2011-00486-COA-R3CV, 2012 WL 1253269, at *9 (Tenn. Ct. App. Apr. 12, 2012) ("whether Defendant's [TCPA] violation … caused damage to Plaintiffs" was for "the jury"); *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. App. 2017) ("Causation under the CPA is a factual question to be decided by the trier of fact.").

12

**A.    Empower's Illegal Sales Are Unfair.**

Each relevant state's consumer protection statute provides two tests for unfairness: (1) a flexible multifactor analysis and (2) a statutory list of *per se* unfair conduct. Conduct that satisfies either test is unfair. Empower's conduct satisfies the multifactor analyses used in Alaska, Connecticut, Hawaii, North Carolina, South Carolina, Tennessee, and Washington, and is independently *per se* unfair under Alaska, Colorado, and Tennessee law.

1.    *Empower's illegal sales satisfy the multifactor unfairness test.*

Alaska, Connecticut, Hawaii, North Carolina, South Carolina, and Washington each assess whether the challenged conduct (1) "offends public policy as it has been established by statutes, the common law, or otherwise"; (2) "is immoral, unethical, oppressive, or unscrupulous"; **_or_** (3) "causes substantial injury to consumers (or competitors or other businessmen)." *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 905 (1972); *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 412 (Alaska 2017); *Ulbrich*, 78 A.3d at 100; *State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 422 (Haw. 2023); *Nauful v. Navy Fed. Credit Union*, No. CV 3:23-2357-MGL, 2023 WL 12204768, at *3 (D.S.C. Oct. 19, 2023); *Greenberg v. Amazon.com, Inc.,* 553 P.3d 626, 640 (Wash. 2024); *see also Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007). "All three … factors are not necessary to a finding of unfairness. 'A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three.'" *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 226 n.113 (Alaska 2016); *Ulbrich*, 78 A.3d at 100; *Shikada*, 526 P.3d at 422. Tennessee focuses on the third factor, analyzing whether "the act or practice causes or is likely to cause substantial injury to consumers[.]" *Morrison v. Allen*, 338 S.W.3d 417, 439 (Tenn. 2011). Empower's conduct satisfies all three *Sperry* factors.

13

*First*, Empower offends "public policy as it has been established by statutes," *Sperry*, 405 U.S. at 244 n.5, because selling unapproved drugs "is prohibited by statute." *Merdes*, 410 P.3d at 412; *see e.g.*, *Rush v. Blackburn*, 361 P.3d 217, 225 n.7 (Wash. Ct. App. 2015) (collecting cases holding "that acts or practices violating applicable statutes constituted unfair or deceptive practices, even though the relevant statutes themselves did not contain clauses declaring violations thereof to constitute per se violations"); *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1144 (Conn. 1992) (statutory violations offend public policy); *Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*, No. 219CV07748CASPLAX, 2021 WL 4963516, at \*16–17 (C.D. Cal. Oct. 26, 2021), *rev'd on other grounds*, No. 22-55173, 2023 WL 4758454 (9th Cir. July 26, 2023) (violations of Connecticut and South Carolina new-drug laws offend public policy); *Hungate v. L. Off. of David B. Rosen*, 391 P.3d 1, 18 (Haw. 2017), *abrogated on other grounds by Shikada*, 526 P.3d 395 ("factfinder could determine" that "conduct offended public policy" because defendant "violated" statutory and common-law duty); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 423 S.E.2d 324, 326–27 (N.C. App. 1992) ("The violation of regulatory statutes which govern business activities may also be a violation of N.C. Gen. Stat. § 75-1.1."). In short, statutory violations alone are routinely considered sufficient to show unfair competition. *See, e.g.*, *Rush*, 361 P.3d at 225 n.7.

*Second*, Empower's sale of unapproved knockoffs is "immoral, unethical, oppressive, [and] unscrupulous." *Sperry*, 405 U.S. at 244 n.5. Empower's mass-produced drugs have "never been studied clinically," let alone "demonstrated to be safe or effective," creating "dangerous patient safety risks." Compl. ¶¶ 10–11, 16–17, 54–55, 78. Empower's conduct amounts to "a giant, uncontrolled, unconsented human experiment … without any disclosure of the risks entailed." *Id.* ¶ 16. And Empower's false representations downplay those "serious health risks." *Id.* ¶¶ 54–55.

14

That is a paradigmatic unfair practice. *Shikada*, 526 P.3d at 424–25 (refusing to research drug efficacy is "immoral, unethical, oppressive, unscrupulous"); *Maher v. AMAG Pharms., Inc.*, No. CV 20-152 (JXN) (JBC), 2024 WL 1376685, at *18 (D.N.J. Mar. 28, 2024) (selling "a drug that did not work" was "immoral, unethical, oppressive or unscrupulous").

Empower suggests its conduct lacks "egregious or aggravating circumstances." Mot. at 14–15 (citing *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 492 (N.C. 1991)). But "aggravating circumstances" are only required "when a plaintiff's … claim is centered around the defendant's breach of a contract." *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 869 S.E.2d 34, 42, 46 (N.C. App. 2022). And aggravating circumstances *are* present here: Empower takes "intentional" regulatory shortcuts in its mass-production and sale of untested drugs, creating "serious health risks" for its patients while trading on Lilly's reputation and goodwill. Compl. ¶¶ 6, 15, 55, 89, 150–55; *Empower*, 2026 WL 1162765, at *2. Conduct like Empower's has injured and killed people for decades. Compl. ¶¶ 56–57, 61–63. No further "egregious or aggravating circumstances" are necessary.

*Third*, Empower's conduct is likely to substantially injure consumers and competitors. As *Revive* held, "Lilly alleges that '[c]ompounded versions of tirzepatide can and have caused real harm.'" *Revive*, 812 F. Supp. 3d at 735; Compl. ¶¶ 84–87. Sales of unapproved drugs under the guise of compounding have disabled, hospitalized, and killed hundreds. Compl. ¶¶ 56–57, 61–63. These "[s]afety concerns" are heightened by Empower's "long history of safety and regulatory violations." *Id.* ¶ 88. Empower failed ten FDA inspections in the last ten years, received six warning letters, initiated four nationwide recalls, and faced disciplinary proceedings in eight states. *Id.* ¶¶ 89, 126–56; ECF No. 57. Unsurprisingly, "there have been reports of Empower consumers experiencing adverse events" from its tirzepatide products—and the true number is likely much

15

higher, because Empower is not required to report adverse events. Compl. ¶¶ 64, 85, 104, 119. For example, an otherwise-healthy 50-year-old patient died after 29 days in the ICU from taking drugs that the FDA found Empower made in "insanitary conditions, whereby they may have become contaminated with filth or rendered injurious to health." Complaint ¶¶ 72, 76–79, *Stash v. Empower Clinic Servs., LLC* (Dist. Ct. Harris Cnty., Tex. Apr. 10, 2026).

Empower asserts that this Court "found lacking" the "consumer-harm showing" required under the third *Sperry* factor. Mot. at 12 (citing *Empower*, 2026 WL 1162765, at *7–8). But the Court's previous Order did not address whether Empower's mass-production and sale of unapproved drugs is likely to injure consumers or competitors. The language Empower points to concerns only whether Empower's *false advertising* proximately caused Lilly's *reputational* harm under the Lanham Act—a distinct inquiry. Further, and directly contrary to Empower's argument, the Court's Order endorsed *Revive*'s "observations, reasoning, and conclusions," *Empower*, 2026 WL 1162765, at *14, and *Revive* held that Lilly alleged "harms to 'actual and prospective purchasers' such that" the compounder's "misconduct 'potentially affects a large swath of the public.'" *Revive*, 812 F. Supp. 3d at 735. The same is true here, and that is precisely the consumer-injury showing the third *Sperry* factor requires. Any one of the *Sperry* factors is sufficient to establish unfairness, and Lilly's allegations satisfy all three.

        2.     *Empower's illegal sales are per se unfair under Alaska, Colorado, and Tennessee law.*

Empower's sale of unapproved drugs is *per se* unfair under Alaska, Colorado, and Tennessee law.

In Alaska, Empower's conduct constitutes a *per se* violation of the UTPA in two ways. *First*, Empower's sale of unapproved drugs "violat[es] a labeling or advertising provision of AS 17.20 (Alaska [FDCA])." Alaska Stat. § 45.50.471(b)(48). Empower has not submitted the

16

proposed label for its new drugs to the Alaska Commissioner prior to selling them, which violates the Alaska FDCA. *Id.* § 17.20.110(a)(2); Compl. ¶¶ 168–69. *Second*, Empower's conduct "caus[es] a likelihood of confusion or misunderstanding as to the … approval … of goods" because selling unapproved drugs directly contravenes federal and state pre-market-approval schemes. Alaska Stat. § 45.50.471(b)(3); *see also id.* § 45.50.471(b)(4) (barring "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"); *id.* § 45.50.471(b)(6) (outlawing "representing that goods or services are of a particular standard, quality, or grade … if they are of another"). Because both state and federal law require pre-market approval to sell prescription drugs, consumers are likely to assume that the tirzepatide drugs Empower sells in Alaska have received such approval, when they have never been approved by FDA or any state agency. Compl. ¶¶ 3, 5, 164–65, 196. Lilly already explained these violations, but Empower fails to respond. ECF No. 49 at 25–26.

Empower's sale of unapproved drugs is also *per se* unfair under Colorado law. Colorado law prohibits selling goods without "obtain[ing] all governmental licenses or permits required." Colo. Rev. Stat. § 6-1-105(1)(z). Empower has not sought, much less obtained, the approved drug application required for its tirzepatide products. Colo. Rev. Stat. § 12-280-131(1); 21 U.S.C. § 355(a); Compl. ¶ 165. Empower thus sells new drugs without the required governmental permission—a straightforward *per se* violation. *See Telebrands Corp. v. VindEx Sols. LLC*, No. 21-CV-00898-BLF, 2022 WL 1062051, at *8 (N.D. Cal. Apr. 8, 2022) (selling products "without the requisite FDA clearance" violates the "clear language of" Colo. Rev. Stat. § 6-1-105(1)(z)); *see also Walter v. Hall*, 940 P.2d 991, 999 (Colo. Ct. App. 1996) (affirming jury verdict finding that defendants' failure to obtain an easement violated "licenses or permits" provision of CCPA).

17

Tennessee law reaches the same result. A person violates the TCPA by "[a]dvertising, promoting, selling, or offering for sale a good or service that is illegal or unlawful." Tenn. Code § 47-18-104(b)(73). Tennessee law in turn prohibits selling new drugs without FDA approval. *Id.* § 53-1-110(a). Empower's illegal sale of unapproved drugs is therefore *per se* unfair under Tennessee law. *See Hope Med.*, 2021 WL 4963516, at *16.

**B.      Empower's Unfair Conduct Causes Lilly Harm.**

Empower contends that Lilly's allegations do not satisfy the "causal link between the alleged unfair conduct and harm" required under state law. Mot. at 9. Yet again, this does not call for a Rule 7 reply, but is a too-little-too-late dismissal argument. And, yet again, Empower is wrong. As the court in *Revive* explains, Lilly is harmed because "Lilly alleged sales of tirzepatide products made by the defendant would have been made by Lilly but for the defendant's unlawful and unfair competition." *Empower*, 2026 WL 1162765, at *13 (citing *Revive*, 812 F. Supp. 3d at 729). Lilly and Empower are direct competitors: both sell a tirzepatide-containing product, for the same conditions (type 2 diabetes and weight management), in the same eight states, to the same patients. Compl. ¶¶ 14, 70, 93, 158; *see Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 853 (S.D. Ohio 2000) (parties are in "direct competition" when their products are "substitutes for one another"); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1048–50 (5th Cir. 2023) (products "similar in character or use" are in competition); *Kebab Gyros, Inc. v. Riyad*, No. 3:09-0061, 2011 WL 1522343, at *9 (M.D. Tenn. Apr. 19, 2011) (parties selling similar products were "in competition"). Courts have repeatedly held that manufacturers of FDA-approved drugs and sellers of purportedly compounded versions of the same active ingredient are "competitors." *Zyla*, 134 F.4th at 331; *Eli Lilly & Co. v. Adonis Health, Inc.*, 25-cv-03536-JST, 2025 WL 2721684, at *3 (N.D. Cal. Sept. 24, 2025) (parties were "direct competitors" where they both "market and sell

18

tirzepatide-containing drugs to the same potential customers").[7] Sales made by Lilly's direct competitor which "would have been made by Lilly but for Empower's unlawful and unfair competition" cause Lilly "financial harm as a direct result." Compl. ¶¶ 17, 158, 174, 207–09.

Empower asserts that the Court's Lanham Act standing holding "call[s] into question" causation under Lilly's "state law claims" because they "depend on" the "same causal chain." Mot. at 12. Not so. The Lanham Act claim required Lilly to show that Empower's *false advertising*— its specific marketing statements—proximately caused Lilly's harm. *Empowe*r, 2026 WL 1162765, at \*7. Lilly's state unfair-competition claims rest on a different theory of harm: that Empower's *illegal sale of a directly competing product* diverts some customers who would otherwise purchase Lilly's medicines. *See* Compl. ¶¶ 158, 174. The causal chains are distinct because the conduct at issue is distinct—one involves misleading statements, the other involves the unlawful act of selling unapproved drugs.

Empower also rehashes its already-rejected argument that "the physician" serves "as an insurmountable barrier in the chain of causation." Mot. at 9–10 (citing *Novo Nordisk A/S v. Amble Health, Inc.*, No. 4:25-cv-01048, 2026 WL 776100 (N.D. Ohio Mar. 19, 2026)); *Eli Lilly & Co. v. Willow Health Servs., Inc.*, 2:25–cv–03570–AB–MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026)). This Court did not accept that argument in its last decision, and should not do so now. Empower's two cited cases are poorly reasoned outliers that several courts have squarely rejected.[8]

---

[7]   *Eli Lilly & Co. v. Aios, Inc.*, No. 25-cv-03535-HSG, 2026 WL 836624, at \*6–7 (N.D. Cal. Mar. 26, 2026); *Novo Nordisk A/S v. Ikon Health LLC*, No. 4:24-cv-05093-RLP, 2026 WL 196475, at \*1, 3 (E.D. Wash. Jan. 26, 2026); *Revive*, 812 F. Supp. 3d at 717; *Novo Nordisk, Inc. v. DCA Pharmacy*, 745 F. Supp. 3d 626, 628 (M.D. Tenn. 2024).

[8]   *See, e.g.*, *Adonis Health*, 2025 WL 2721684, at \*4 (rejecting argument that "the provider's decision to prescribe" breaks the causal chain); *Ikon Health*, 2026 WL 196475, at \*3 (same, including under Washington's CPA); *Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2026 WL 1076831, at \*6–7 (N.D. Cal. Apr. 20, 2026) (same, including under state unfair competition statute); *Revive*, 812 F. Supp. 3d at 735–36 (rejecting argument that "because compounded drugs are dispensed under a doctor's prescription," their effect "is mediated by highly sophisticated doctors"); Order, ECF No. 47, *Southend Pharmacy*, No. 4:24-cv-05051 (S.D. Tex. Apr. 17, 2026) (same).

Carried to its logical conclusion, Empower's theory would cut off every unfair-competition claim involving a prescription drug. That result is foreclosed by Fifth Circuit precedent, which allows "competitors" to "bring suit under traditional state unfair-competition law" if "anyone sells drugs in violation of" state new-drug laws. *Zyla*, 134 F.4th at 331; *see also, e.g.*, *Revive*, 812 F. Supp. 3d at 735–36 (rejecting "learned-intermediary" argument and permitting unfair competition claims concerning prescription drugs); *Healthpoint Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *2 (W.D. Tex. Mar. 18, 2008) (denying motion to dismiss unfair competition claims involving prescription drugs); Order, ECF No. 47, *Southend Pharmacy*, No. 4:24-cv-05051 (S.D. Tex. Apr. 17, 2026) (same); *Adonis Health*, 2025 WL 2721684, at *4–5 (noting that courts "routinely" permit claims concerning "prescription drugs, where the prescriber is the gatekeeper for the product"); *Ikon Health*, 2026 WL 196475, at *3 (allowing Lanham Act claim concerning prescription drugs); *Mochi*, 2026 WL 1076831, at *6–7 (same). The chain of causation here is "direct." Compl. ¶¶ 158, 175. Lilly has more than adequately alleged that Empower's illegal sales foreseeably divert its customers and harm its brand. Requiring Lilly to do so again, in a Rule 7 reply, would "not enhance the efficiency of the litigation" and should be rejected. *Garner*, 237 F.R.D. at 400.

## IV.   EMPOWER'S VIOLATIONS ARE ACTIONABLE.

Empower's final argument is that Lilly cannot sue because the state new-drug statutes Lilly invokes do not themselves create a private right of action. Mot. at 8; *see id.* at 10, 13. This too is wrong. Courts routinely hold that plaintiffs "may predicate a[n unfair competition] claim on violations of statutes or regulations that themselves do not allow for private enforcement." *Patane*, 478 F. Supp. 3d at 328; *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 51–55 (Colo. 2001) (*en banc*) (permitting unfair competition claim based on insurance statute that did not provide a private right of action); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924–26 (Tenn. 1998)

(permitting unfair competition claim based on statute that barred private cause of action); *Ellis v. Smith-Broadhurst, Inc.*, 268 S.E.2d 271, 272–73 (N.C. Ct. App. 1980) (allowing unfair competition despite argument that predicate statutes "do not contain a private right of action"). In those holdings, courts recognize the difference between direct private enforcement of a regulatory statute and using the regulatory statute "as a vehicle through which to bring a[n unfair competition] claim." *Macomber v. Travelers Prop. & Cas. Corp.*, 804 A.2d 180, 196 n.14 (Conn. 2002) (allowing use of regulatory statute "as a vehicle …, rather than as a stand alone claim"). Lilly is not privately enforcing state FDCAs. For example, Lilly cannot obtain and does not seek the civil and criminal penalties,[9] or the embargo of adulterated or misbranded articles,[10] that those statutes reserve to the State. Whether a statute "convey[s] a private right of action to [Lilly] is [therefore] irrelevant to whether" Lilly can "predicate[] [an unfair competition claim] upon the public policy embodied in [that] statute." *Eder Bros. v. Wine Merchs. of Conn., Inc.*, 880 A.2d 138, 150 (Conn. 2005).

Contrary to Empower's claims, the "exclusivity provisions in [Connecticut's and Washington's] FDCA statutes that preclude private enforcement" do not change that conclusion. Mot. at 8. Courts routinely permit unfair competition claims predicated on state FDCA statutes and statutes with similarly restrictive language. *See, e.g.*, *Patane*, 478 F. Supp. 3d at 328 (holding that "plaintiffs' CUTPA claim may [] proceed on the basis of a statute such as the CFDCA that … allows only for its public enforcement by the State of Connecticut"); *Myint*, 970 S.W.2d at 925 (permitting unfair competition claim based on insurance statute providing that "the commissioner

---

[9]   *See, e.g.*, Alaska Stat. §§ 17.20.315, 17.20.365; Colo. Rev. Stat. § 12-280-129; Conn. Gen. Stat. § 21a-95; HRS § 328-29(a); N.C. Gen. Stat. § 106-124.1(a); S.C. Code § 39-23-80(b); Tenn. Code §§ 53-1-103(b), 40-35-111(e)(3).

[10]  *See, e.g.*, Alaska Stat. § 17.20.230; Colo. Rev. Stat. § 12-280-108(4); Conn. Gen. Stat. § 21a-96; HRS §§ 328-25(b), 328-26; N.C. Gen. Stat. § 106-125; S.C. Code § 39-23-130; Tenn. Code § 53-1-201; Wash. Rev. Code § 69.04.110.

shall have sole enforcement authority for this part, and nothing in this part shall be construed to create or imply a private cause of action") (citing Tenn. Code § 56-8-101); *Crowe v. Tull*, 126 P.3d 196, 205–08 (Colo. 2006) (*en banc*) (permitting unfair competition claim against attorneys, rejecting argument that doing so would "invade the exclusive province of this court and its disciplinary process"); *see also Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 340–41 (Haw. 1996) (permitting bad-faith claim in insurance context despite statute that required all "remedies, penalties and proceedings set forth in this article [] to be invoked solely and exclusively by the commissioner") (citing HRS § 431:13-107).

Empower's only cited case, *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S. Ct. 1012, (2001), does not save its argument. As this Court has already explained, *Buckman* found that the federal "FDCA impliedly preempts state law claims premised on FDCA violations," not claims—like Lilly's—that "rel[y] on an independent state law duty." *Empower*, 2026 WL 1162765, at *9–11 (rejecting Empower's preemption argument); *see also Zyla*, 134 F.4th at 337–38 (distinguishing *Buckman* on same grounds).

Empower next insists that this Court's ruling dismissing Lilly's Texas common-law claim for lack of a private right of action "applies with equal force to the remaining eight states." Mot. at 13. That is again wrong, and the Court has already explained why. The Court's prior decision foreclosed that argument, explaining that in Texas "only 'consumers,' not competitors[,] may enforce Texas' Deceptive Trade Practices Act," whereas "other states' unfair competition laws include *far broader protections*, allowing 'a person' or 'any person' to file suit." *Empower,* 2026 WL 1162765, at *13 (quoting *Revive*, 812 F. Supp. 3d at 729) (emphasis added). The Texas claim was dismissed because the Court concluded that Texas, alone among the states at issue, "does not have a comparably broad unfair competition statute." *Empower,* 2026 WL 1162765, at *13.

22

For the same reason, Empower's unsupported claim that "Lilly lacks standing … because it is not a consumer" is wrong. Mot. at 8. Each state statute at issue here allows competitor claims. *See, e.g.*, *Donahue v. Legends, Inc.*, 331 P.3d 342, 353 (Alaska 2014) ("The act … protects honest businesses from their unethical competitors."); *Hall v. Walter*, 969 P.2d 224, 231 (Colo. 1998) (CCPA protects "more than just actual or potential consumers"); *Eder Bros.*, 880 A.2d at 149 ("CUTPA was designed to provide protection to businesses as well as to consumers."); *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 309 (Haw. 2010) ("'any person' is not limited to consumers," but extends to "businesses, or competitors"); *HAJMM Co.*, 403 S.E.2d at 492 (NCUDTPA "extend[s] to businesses"); *United States v. RCS Corp.*, 366 F. Supp. 2d 332, 337 (D.S.C. 2005) ("SCUTPA is not limited solely to consumer transactions."); *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 629 (Tenn. 2000) ("[I]t is irrelevant whether a corporation is a 'consumer' under the Act because the right of action is given to 'person[s.]'"); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1061 (Wash. 1993) ("[T]here is no language in the Washington act which requires that a CPA plaintiff be the consumer of goods or services.").

Empower does not dispute that each state's unfair-competition law makes actionable conduct that either meets the multifactor test for unfairness or is defined as a *per se* violation. Because Empower's mass sale of unapproved tirzepatide products satisfies the multifactor unfairness test in every state at issue and constitutes a *per se* violation under Alaska, Colorado, and Tennessee law, *supra* Part III, it is actionable under the laws of those states.

## **CONCLUSION**

Lilly respectfully requests that the Court deny Defendant's Motion to Invoke Federal Rule of Civil Procedure 7 to Require a Reply.

23

Dated: June 3, 2026

Respectfully submitted,

/s/ *James John Lomeo*
James John Lomeo (*attorney-in-charge*)
Texas Bar No. 24118993
Southern District No. 3511238
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9101
Facsimile: (512) 678-9101
james.lomeo@kirkland.com

James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
Robin A. McCue (*pro hac vice*)
Ryan J. Moorman (*pro hac vice*)
James R.P. Hileman (*pro hac vice*)
Nicholas M. Ruge (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.hurst@kirkland.com
diana.watral@kirkland.com
robin.mccue@kirkland.com
ryan.moorman@kirkland.com
jhileman@kirkland.com
nicholas.ruge@kirkland.com

Joshua L. Simmons (*pro hac vice*)
Jeanna M. Wacker (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.simmons@kirkland.com
jeanna.wacker@kirkland.com

David I. Horowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4200
dhorowitz@kirkland.com

24

Eugene Temchenko
Texas Bar No. 24118928
Southern District No. 3929004
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
Telephone: (214) 432-5072
Facsimile: (214) 972-1771
eugene.temchenko@kirkland.com

*Counsel for Plaintiff Eli Lilly and Company*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, a true and correct copy of this document was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above captioned case.

*/s/ James John Lomeo*

James John Lomeo