**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> EMPOWER CLINIC SERVICES, LLC d/b/a EMPOWER PHARMACY, <br><br> Defendant. | Civil Action No. 4:25-cv-3464 |

**DEFENDANT EMPOWER CLINIC SERVICES, L.L.C. d/b/a EMPOWER
PHARMACY'S REPLY IN SUPPORT OF ITS MOTION TO INVOKE FED. R. CIV. P. 7
<u>TO REQUIRE A REPLY</u>**

**TABLE OF CONTENTS**

**Page**

I.  LILLY MISCHARACTERIZES THE RULE 7 STANDARD AND THIS COURT'S AUTHORITY ...................................................................................................... 2

II.  LILLY MISCHARACTERIZES THE REVIVE RX RULING ....................................... 3

III.  EMPOWER'S AFFIRMATIVE DEFENSE HAS NOT BEEN "FULLY ADDRESSED" ...................................................................................................... 3

IV.  COMPOUNDED MEDICINES ARE NOT "NEW DRUGS" UNDER STATE LAW ...................................................................................................... 4

    A.  The Original Public Meaning of "New Drug" Excluded Compounded Medicines ...................................................................................................... 4

    B.  State Statutory Definitions Confirm That Compounded Medicines Are Not "New Drugs" ...................................................................................................... 5

    C.  Lilly's "Not Compounding" Allegation Cannot Defeat a Rule 7 Reply ............... 6

V.  EVEN IF EMPOWER'S CONDUCT VIOLATED STATE NEW DRUG STATUTES, IT WOULD NOT CONSTITUTE "UNFAIR COMPETITION" ..................................... 6

    A.  The Sperry & Hutchinson Factors Are Not Satisfied ............................................ 6

    B.  The Regulatory Exemptions Bar Lilly's Claims in Each State .............................. 8

    C.  Lilly's Per Se Theories Fail .................................................................................... 9

VI.  CONNECTICUT'S AND WASHINGTON'S FDCA-STYLE EXCLUSIVITY PROVISIONS INDEPENDENTLY BAR LILLY'S CLAIMS ..................................... 10

VII.  THIS COURT'S PRIOR FINDINGS DEMONSTRATE LILLY'S CLAIMS ARE FUTILE ...................................................................................................... 11

VIII.  LILLY LACKS STANDING UNDER STATE CONSUMER PROTECTION STATUTES ...................................................................................................... 12

IX.  A REPLY WILL PROMOTE JUDICIAL EFFICIENCY ........................................... 13

PRAYER ...................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ................................................................................................ 10

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ................................................................................................. 2

*Cunningham v. Cornell University*,
    604 U.S. 693 (2025) .................................................................................... 1, 2, 3, 6, 13

*Eli Lilly and Co. v. Revive RX, LLC*,
    812 F. Supp. 3d 708 (S.D. Tex. 2025) ........................................................ 1, 2, 3, 12, 13

*Garner v. Morales*,
    237 F.R.D. 399 (S.D. Tex. 2006) ............................................................................. 2

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024) ..................................................................................... 7

*HAJMM Co. v. House of Raeford Farms, Inc.*,
    403 S.E.2d 483 (N.C. 1991) ................................................................................... 8

*In re Enron Corp.*,
    540 F. Supp. 2d 759 (S.D. Tex. 2007) ..................................................................... 2

*Medical Center Pharmacy v. Mukasey*,
    536 F.3d 383 (5th Cir. 2008) ................................................................................... 4

*Merdes & Merdes, P.C. v. Leisnoi, Inc.*,
    410 P.3d 398 (Alaska 2017) .................................................................................... 7

*Morrison v. Allen*,
    338 S.W.3d 417 (Tenn. 2011) ................................................................................ 11

*Nauful v. Navy Fed. Credit Union*,
    2023 WL 12204768 (D.S.C. Oct. 19, 2023) ............................................................. 7

*Novo Nordisk A/S v. Amble Health, Inc.*,
    2026 U.S. Dist. LEXIS 57471 (N.D. Ohio Mar. 19, 2026) ......................................... 12

*Patane v. Nestle Waters N. Am., Inc.*,
    478 F. Supp. 3d 318 (D. Conn. 2020) ...................................................................... 10

*State ex rel. Shikada v. Bristol-Myers Squibb Co.*,
　　526 P.3d 395 (Haw. 2023) ................................................................................ 7

*State v. Scott*,
　　678 S.W.2d 50 (Tenn. 1984) .......................................................................... 13

*Ulbrich v. Groth*,
　　78 A.3d 76 (Conn. 2013) .................................................................................. 7

*Wilson v. Barcella*,
　　2007 WL 963977 (S.D. Tex. 2007) ................................................................. 2

*Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*,
　　134 F.4th 326 (5th Cir. 2025) ..................................................................... 4, 5

**Federal Statutes**

21 U.S.C. § 337(a) ................................................................................................ 10

**State Statutes and Codes**

Alaska Stat. § 17.20.290 ...................................................................................... 12

Alaska Stat. § 45.50.471(b)(3), (4), (6), (48) ...................................................... 9

Alaska Stat. § 45.50.481(a)(1) .......................................................................... 8, 9

Colo. Rev. Stat. § 6-1-105(1)(z) ........................................................................... 9

Colo. Rev. Stat. § 6-1-106(1)(a) .....................................................................8, 10

Conn. Gen. Stat. § 20-633b ................................................................................... 8

Conn. Gen. Stat. § 21a-91 ................................................................................... 12

Conn. Gen. Stat. § 21a-99 ................................................................................... 10

Conn. Gen. Stat. § 21a-120 ................................................................................. 10

Conn. Gen. Stat. § 42-110c(a)(1) .......................................................................... 8

Haw. Rev. Stat. § 461-15(6) .................................................................................. 8

Haw. Rev. Stat. § 481A-5(a)(1) ............................................................................. 8

S.C. Code Ann. § 39-5-40(a) ................................................................................. 9

S.C. Code Ann. § 40-43-86(CC) ................................................................................ 9

Tenn. Code Ann. § 47-18-104(b)(73) ....................................................................... 9

Tenn. Code Ann. § 47-18-111(a)(1) .................................................................... 9, 10

Tenn. Code Ann. § 63-10-216 ............................................................................. 9, 10

Wash. Admin. Code § 246-945-100 .......................................................................... 9

Wash. Rev. Code § 19.86.170 ................................................................................... 9

Wash. Rev. Code § 69.04.001 ............................................................................ 10, 13

Wash. Rev. Code § 69.04.180 ................................................................................. 10

**Other Authorities**

3 Colo. Code Regs. 719-1:21.00.20(b) ...................................................................... 8

FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act*, 2022 WL 16948770 (Nov. 10, 2022)............................ 7

Lilly's Opposition to Empower's Motion to Invoke Federal Rule of Civil Procedure 7 confirms precisely why a reply is needed: Lilly cannot explain how its remaining eight state law claims survive Empower's affirmative defenses. Rather than confront the substance of Empower's regulatory exemptions, Lilly retreats to two untenable positions — that it has already said enough and that everything else should wait for discovery. Neither withstands scrutiny.

The Supreme Court in *Cunningham v. Cornell University*, 604 U.S. 693, 708 (2025), endorsed Rule 7 replies as a mechanism for "district courts to insist that plaintiffs file a reply addressing viable statutory exemptions, to identify claims that likely will not survive a future summary-judgment motion and should not entitle plaintiffs to impose on defendants the burden of costly discovery." Judge Rosenthal applied that reasoning in *Revive Rx*, concluding that "[b]est practice is to review [the defendant's] asserted statutory exemptions to see if [the plaintiff] should file a reply to abate concerns that its claims, though well pleaded, are ultimately futile." *Eli Lilly and Co. v. Revive RX, LLC*, 812 F. Supp. 3d 708, 737 (S.D. Tex. 2025). This Court's own Opinion expressly cited *Revive Rx* and acknowledged the facial merit of Empower's exemption arguments, observing that "Alaska's exemption facially applies to Empower's alleged illegal conduct." ECF No. 80 at 38.

Lilly's Opposition does not change the analysis. If anything, it demonstrates why a reply is necessary: Lilly's substantive arguments are wrong on the law and the facts, and irreconcilable with this Court's prior holdings. As detailed further below, a Rule 7 reply will expose these deficiencies before the parties are subjected to the enormous burden and crippling expense of discovery on claims that are ultimately futile.

**I. Lilly Mischaracterizes the Rule 7 Standard and This Court's Authority**

Lilly contends that a Rule 7 reply is "ordinarily unnecessary and improper" and that Empower cannot identify a "substantial reason" for ordering one. ECF No. 84 at 3. This argument fundamentally misapprehends the standard. Lilly's authorities — *Garner v. Morales*, 237 F.R.D. 399 (S.D. Tex. 2006), *In re Enron Corp.*, 540 F. Supp. 2d 759 (S.D. Tex. 2007), and *Wilson v. Barcella*, 2007 WL 963977 (S.D. Tex. 2007) — all predate the Supreme Court's endorsement of Rule 7 replies in *Cunningham*. In *Cunningham*, the Supreme Court held that statutory exemptions under ERISA constitute affirmative defenses that "must be pleaded and proved by the defendant who seeks to benefit from them," and that a "plaintiff need only allege the three elements" of the relevant claim "because an 'affirmative defense' is 'not something the plaintiff must anticipate and negate in her pleading.'" 604 U.S. at 702. The Court then endorsed the use of Rule 7 replies as a tool to achieve "the prompt disposition of insubstantial claims." *Id.* at 711 (Alito, J., concurring) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998)).

The *Cunningham* framework applies with full force here. Empower has now pleaded its affirmative defenses in its Answer, including the regulatory exemptions under each state's law. This Court itself recognized at the motion to dismiss stage that each state's exemption constitutes an affirmative defense that Empower is required to plead and prove. ECF No. 80 at 47. The posture of this case now mirrors *Revive Rx* — the affirmative defenses have been pled, and a Rule 7 reply is the proper vehicle for requiring Lilly to demonstrate that its claims are not futile in light of those defenses.

Lilly's assertion that its Complaint "meticulously detail[s] Empower's regulatory violations" and is, therefore, "far from 'barebones'" (ECF No. 84 at 6) misses the point entirely. *Cunningham* does not limit Rule 7 replies to barebones complaints. Rather, the Court endorsed

replies to address "viable statutory exemptions" — regardless of how detailed the complaint may be—precisely because "a plaintiff need only allege" the elements of its claim but need not "anticipate and negate" affirmative defenses. 604 U.S. at 702, 708. The entire purpose of a Rule 7 reply is to require the plaintiff to address defenses that the plaintiff was not required to anticipate at the pleading stage but that are now squarely raised.

## II. Lilly Mischaracterizes the Revive Rx Ruling

Lilly contends that the *Revive* court "only ordered a reply to two specific defenses — Alaska's safe harbor and North Carolina's learned-profession exemption" and that "for the vast majority of claims, the Revive court required no reply at all." ECF No. 84 at 7. This characterization is misleading. Judge Rosenthal's opinion in *Revive Rx* addressed every state's statutory exemption in detail, including Alaska, Connecticut, North Carolina, Tennessee, and Washington. 812 F. Supp. 3d at 737–50. Indeed, the *Revive Rx* court concluded that the "best practice" is to review the defendant's asserted statutory exemptions to identify claims that are "well pleaded, [but] ultimately futile." 812 F. Supp. 3d at 737. That principle is not limited to two defenses — it animates the entire Rule 7 procedure.

Moreover, Lilly's suggestion that the *Revive Rx* reply did not "enhance the efficiency of the litigation" (ECF No. 84 at 7) is self-serving speculation that proves Empower's point. If Lilly cannot demonstrate that its claims survive Empower's regulatory exemptions, the parties and the Court will be spared the burden and expense of discovery on futile claims. That is the very efficiency *Cunningham* and *Revive Rx* sought to achieve.

## III. Empower's Affirmative Defense Has Not Been "Fully Addressed"

Lilly argues that a reply is unnecessary because Empower's affirmative defense has already been "fully addressed" through Lilly's Complaint and the parties' prior briefing. ECF No. 84 at 6.

This argument ignores the critical procedural difference between a Rule 12(b)(6) motion and a Rule 7 reply.

At the Rule 12(b)(6) stage, this Court could not resolve Empower's regulatory exemption arguments because the exemptions constituted affirmative defenses requiring factual proof, and the Court was obligated to "draw factual inferences in" Lilly's favor. ECF No. 80 at 47 (citing *Zyla*, 134 F.4th at 331 n.2). The Court expressly acknowledged, however, that "Alaska's exemption facially applies to Empower's alleged illegal conduct," and that Empower's argument that "its state licenses and the pharmacy regulatory schemes in these states authorize the exact conduct of which Lilly complains" had merit. ECF No. 80 at 38, 45.

Now that Empower has pleaded its affirmative defenses and the procedural constraints of Rule 12(b)(6) no longer apply, the legal landscape has fundamentally changed. A Rule 7 reply is the mechanism by which Lilly must confront these defenses head-on, rather than hiding behind the procedural shield that prevented their resolution at the motion to dismiss stage.

### IV. Compounded Medicines Are Not "New Drugs" Under State Law

Lilly's lead substantive argument — that compounded drugs are "new drugs" under state law — is wrong, and each of the eight remaining states' laws confirms it.

**A.**     *The Original Public Meaning of "New Drug" Excluded Compounded Medicines*

Lilly's assertion that the "'new drug' definition" was never changed and that compounded drugs "had been new drugs all along" (ECF No. 84 at 10) is contradicted by decades of regulatory history. As the Fifth Circuit acknowledged in *Medical Center Pharmacy v. Mukasey*, 536 F.3d 383, 389 (5th Cir. 2008), the FDA historically did not enforce new drug requirements against compounding pharmacies, and Congress codified that understanding when it enacted Section 503A

of the FDCA in 1997. Each of the eight states at issue adopted its state FDCA — including its definition of "new drug" — during this period of universal exclusion.

Lilly's reliance on *Medical Center Pharmacy* and *Zyla* is misplaced. *Medical Center Pharmacy* addressed the federal definition of "new drug" in the context of a challenge to FDA enforcement authority, not the original public meaning of state-law definitions adopted decades earlier. And *Zyla* addressed whether state unfair competition claims premised on new drug violations are preempted by federal law — not whether compounded medicines actually qualify as "new drugs" under state law. 134 F.4th at 330–31. Neither case resolves the state-law interpretive question Empower raises.

**B.      *State Statutory Definitions Confirm That Compounded Medicines Are Not "New Drugs"***

Five of the eight remaining states — **Colorado**, **Connecticut**, **North Carolina**, **Tennessee**, and **Washington** — expressly exclude compounding from their definitions of "manufacture." This is not, as Lilly contends, "beside the point" (ECF No. 84 at 11). When a state legislature enacts specific provisions authorizing and regulating pharmacy compounding while simultaneously defining "manufacture" to exclude compounding, it demonstrates that the legislature did not intend to subject compounding pharmacies to the same premarket approval requirements applicable to drug manufacturers.

Two additional states — **Alaska** and **South Carolina** — adopted the original federal FDCA definition of "new drug" at a time when that definition excluded compounded medicines. And **Hawaii's** use of "new drug" mirrors the original federal FDCA and was enacted during the same exclusionary period.

Lilly dismisses these arguments as "undeveloped" and "waived" (ECF No. 84 at 9), but Empower's Motion set forth each argument with precision. The canons of construction — the

specific-over-the-general canon, the *in pari materia* canon, the presumption against legislative futility, and the elephant-in-mousehole doctrine — all foreclose Lilly's reading. A state legislature that enacts detailed statutes authorizing, licensing, and regulating pharmacy compounding cannot simultaneously be understood to have subjected those same pharmacies to crippling civil liability under different, more general sections of code barring sales of "new drugs."

**C.    *Lilly's "Not Compounding" Allegation Cannot Defeat a Rule 7 Reply***

Lilly repeatedly falls back on its allegation that "Empower is not 'compounding'" (ECF No. 84 at 8), but this allegation only underscores the need for a Rule 7 reply. If Lilly's theory of liability depends on the factual premise that Empower is not engaged in compounding — a premise that Empower disputes and that this Court has recognized is a factual issue — then Lilly should be required to explain in a reply how it intends to prove that premise, and why Empower's regulatory exemptions do not render Lilly's claims futile even if the premise is established. This is precisely the type of inquiry that *Cunningham* and *Revive Rx* endorsed.

### V. Even If Empower's Conduct Violated State New Drug Statutes, It Would Not Constitute "Unfair Competition"

Lilly contends that Empower's conduct is "unfair" under the Sperry & Hutchinson factors and constitutes *per se* violations of Alaska, Colorado, and Tennessee law. ECF No. 84 at 12–18. Each argument fails.

**A.    *The Sperry & Hutchinson Factors Are Not Satisfied***

Lilly asserts that Empower's conduct "offends public policy," is "immoral, unethical, oppressive, and unscrupulous," and "is likely to substantially injure consumers and competitors." ECF No. 84 at 13–16. But the Federal Trade Commission's own policy statement — the "lodestar for interpreting 'unfair methods of competition'" in **Alaska**, **Connecticut**, **Hawaii**, **North Carolina**, **South Carolina**, and **Washington** — makes clear that "violations of generally

applicable laws by themselves, such as environmental or tax laws, that merely give an actor a cost advantage would be unlikely to constitute a method of competition." FTC, *Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act*, 2022 WL 16948770, at *4 (Nov. 10, 2022).

Lilly's theory that Empower's "mass-produced drugs" create "dangerous patient safety risks" (ECF No. 84 at 15) is contradicted by this Court's own finding that Lilly's allegations "do not support a plausible inference that Empower's compounded tirzepatide medications are not safe and effective, that consumers taking them do not achieve desired results, or that Empower's customers are likely to draw unwarranted conclusions about the safety and effectiveness of Lilly's tirzepatide medications." ECF No. 80 at 17. Lilly cannot simultaneously rely on safety allegations that this Court has already found deficient.

Under the Sperry & Hutchinson framework, which governs unfairness determinations in Alaska (*Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 412 (Alaska 2017)), Connecticut (*Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013)), Hawaii (*State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 422 (Haw. 2023)), South Carolina (*Nauful v. Navy Fed. Credit Union*, 2023 WL 12204768, at *3 (D.S.C. Oct. 19, 2023)), and Washington (*Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 640 (Wash. 2024)), Lilly cannot establish that Empower's conduct is "unfair" where the very conduct at issue is authorized and regulated by each state's pharmacy regulatory scheme. *See Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 179 n5, 92 S. Ct. 898, 905, n.5 (1972) (approving factors considered by the Federal Trade Commission in measuring unfairness, which are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.)

- 7 -

**B.**    *The Regulatory Exemptions Bar Lilly's Claims in Each State*

Each of the remaining eight states exempts from unfair competition liability conduct that is authorized by regulatory bodies:

**1.  Alaska**: Alaska Stat. § 45.50.481(a)(1) exempts "an act or transaction regulated by a statute or regulation administered by the state, including a state regulatory board or commission." This Court recognized that "Alaska's exemption facially applies to Empower's alleged illegal conduct." ECF No. 80 at 38.

**2.  Colorado**: Colo. Rev. Stat. § 6-1-106(1)(a) exempts conduct authorized by regulatory agencies. Colorado's statutory scheme authorizes nonresident prescription drug outlets to dispense compounded medications. 3 Colo. Code Regs. 719-1:21.00.20(b).

**3.   Connecticut**: Conn. Gen. Stat. § 42-110c(a)(1) exempts conduct authorized by regulatory bodies. Connecticut has established a comprehensive licensing framework for pharmacies dispensing compounded medications. Conn. Gen. Stat. § 20-633b.

**4.  Hawaii**: Haw. Rev. Stat. § 481A-5(a)(1) exempts regulated conduct. Hawaii requires any entity engaged in the sale of compounded medications to first obtain a permit from the board. Haw. Rev. Stat. § 461-15(6).

**5.  North Carolina**: While the regulatory exemption analysis differs, North Carolina law requires "egregious or aggravating circumstances" to establish unfair competition. *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 492 (N.C. 1991). Lilly's contention that aggravating circumstances are only required for breach-of-contract claims (ECF No. 84 at 15) misstates North Carolina law. Empower's conduct — compounding and dispensing medications pursuant to prescription, as authorized by state law — does not present the "egregious or aggravating circumstances" required under the NCUDTPA.

- 8 -

**6.    South Carolina**: S.C. Code Ann. § 39-5-40(a) exempts conduct authorized by regulatory bodies. South Carolina sets forth specific requirements for compounding of medication by pharmacies. S.C. Code Ann. § 40-43-86(CC).

**7.  Tennessee**: Tenn. Code Ann. § 47-18-111(a)(1) exempts regulated conduct. Tennessee has established licensing requirements for pharmacies engaged in compounding. Tenn. Code Ann. § 63-10-216.

**8.  Washington**: Wash. Rev. Code § 19.86.170 exempts conduct authorized by regulatory bodies. Washington establishes minimum standards for pharmacies engaged in compounding. Wash. Admin. Code § 246-945-100.

Empower holds active licenses in all eight states authorizing the very conduct of which Lilly complains — selling and dispensing compounded medications. Lilly should be required, in a Rule 7 reply, to explain why each of these regulatory exemptions does not render its claims futile.

**C.    *Lilly's Per Se Theories Fail***

Lilly contends that Empower's conduct is *per se* unfair under Alaska, Colorado, and Tennessee law. ECF No. 84 at 16–18. These arguments are meritless.

As to **Alaska**, Lilly invokes Alaska Stat. § 45.50.471(b)(48) (violation of Alaska FDCA labeling or advertising provisions) and § 45.50.471(b)(3), (4), and (6) (likelihood of confusion, false representations, and misrepresentation of quality). But this Court has already noted that Lilly did not plead *per se* violations in its Complaint. ECF No. 80 at 36–37. Moreover, the Alaska FDCA regulatory exemption in § 45.50.481(a)(1) facially applies, as this Court recognized.

As to **Colorado**, Lilly argues that Empower violated Colo. Rev. Stat. § 6-1-105(1)(z) by selling goods without "obtaining all governmental licenses or permits required." ECF No. 84 at 17. However, Empower holds a valid pharmacy license issued by the Colorado State Board of

Pharmacy which authorizes a compounding pharmacy to prepare and dispense compounded drug products within its licensed scope of practice. Empower's regulated activity pursuant to its state-issued pharmacy license is shielded from liability by the exemption set forth in C.R.S. § 6-1-106(1)(a).

As to **Tennessee**, Lilly argues that advertising or selling "a good or service that is illegal or unlawful" violates Tenn. Code § 47-18-104(b)(73). ECF No. 84 at 18. But Empower's activities are licensed and authorized by Tennessee — Tennessee has enacted specific licensing requirements for compounding pharmacies. Tenn. Code Ann. § 63-10-216. Conduct that is licensed and authorized by the state is not "illegal or unlawful." Moreover, the Tennessee regulatory exemption in Tenn. Code Ann. § 47-18-111(a)(1) independently bars Lilly's claims.

### VI. Connecticut's and Washington's FDCA-Style Exclusivity Provisions Independently Bar Lilly's Claims

Lilly concedes that Connecticut and Washington contain exclusivity provisions that reserve enforcement of their respective FDCAs to the State but argues that these provisions do not bar unfair competition claims predicated on FDCA violations. ECF No. 84 at 21–22.

Lilly's position is untenable. Connecticut provides that "[a]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the state of Connecticut." Conn. Gen. Stat. § 21a-99. Washington contains an identical provision. Wash. Rev. Code § 69.04.180. Both states require that their FDCAs be construed consistently with the federal FDCA. Conn. Gen. Stat. § 21a-120; Wash. Rev. Code § 69.04.001. The federal FDCA's parallel exclusivity provision, 21 U.S.C. § 337(a), has been held to preclude private enforcement. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).

Lilly's reliance on *Patane v. Nestle Waters N. Am., Inc.*, 478 F. Supp. 3d 318, 328 (D. Conn. 2020), does not save its argument. *Patane* involved a consumer — not a competitor —

bringing an unfair competition claim predicated on food-labeling violations, a context far removed from Lilly's attempt to use state unfair competition laws to eliminate competition from a licensed compounding pharmacy. Lilly is not a consumer; it is a brand-name drug manufacturer seeking to weaponize consumer protection laws to eliminate a competitor. A Rule 7 reply would require Lilly to explain how it can premise unfair competition claims on violations of state FDCAs that expressly bar private enforcement.

## VII. This Court's Prior Findings Demonstrate Lilly's Claims Are Futile

Lilly contends that the Court's Lanham Act standing analysis is "a distinct inquiry" from its state unfair competition claims because "the conduct at issue is distinct — one involves misleading statements, the other involves the unlawful act of selling unapproved drugs." ECF No. 84 at 19. This distinction does not withstand scrutiny.

This Court found that Lilly "failed to allege facts capable of proving that Empower's allegedly false and deceptive advertisements caused Lilly to lose sales or harmed Lilly's brand or consumer goodwill." ECF No. 80 at 20. The Court further found that Lilly's allegations "do not support a plausible inference that Empower's compounded tirzepatide medications are not safe and effective." ECF No. 80 at 17. These findings fatally undermine the Sperry & Hutchinson "substantial injury to consumers" factor applicable in Alaska, Connecticut, Hawaii, Tennessee, and Washington because Lilly's complaint lacks factual allegations related to this factor.

Moreover, the Tennessee Consumer Protection Act requires that "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves." *Morrison v. Allen*, 338 S.W.3d 417, 439 (Tenn. 2011). This Court's finding that Lilly has failed to allege consumer harm applies with equal force to this requirement.

- 11 -

Lilly's assertion that the physician-gatekeeper argument is a "poorly reasoned outlier" (ECF No. 84 at 19) is contradicted by this Court's own analysis. This Court recognized that Lilly failed to allege facts linking Empower's advertisements to consumers who had been "lured away" from Lilly's tirzepatide medicines. ECF No. 80 at 18–19. The *Novo Nordisk A/S v. Amble Health, Inc.*, 2026 U.S. Dist. LEXIS 57471 (N.D. Ohio Mar. 19, 2026), decision confirms that this causation deficiency is not idiosyncratic but reflects the reality of prescription drug markets where "obtaining a prescription medication requires a physician to prescribe it."

### VIII. Lilly Lacks Standing Under State Consumer Protection Statutes

Lilly contends that each state's unfair competition statute allows competitor claims. ECF No. 84 at 23. But Lilly misses the point. This Court adopted the reasoning of *Revive Rx*, concluding that "the structure of the Texas FDCA's enforcement scheme forecloses private enforcement through common-law unfair-competition torts" and that "Eli Lilly does not belong to the class of persons the statute was designed to protect and did not suffer the type of injury the statute was designed to prevent." ECF No. 80 at 31.

This reasoning applies with equal force to the remaining eight states. Each state's FDCA was enacted to protect public health and consumers — not to provide brand-name drug manufacturers with a private right of action against compounding pharmacies:

1.  **Alaska**: Alaska Stat. § 17.20.290 contains no stated intent to create a private cause of action by brand-name drug manufacturers against compounding pharmacies.

2.  **Colorado**: C.R.S. § 25-5-402 reflects the same purpose.

3.  **Connecticut**: Conn. Gen. Stat. § 21a-91 was enacted to protect public health, not to arm drug manufacturers against pharmacies.

- 12 -

**4. Tennessee**: The primary goal of Tennessee's FDCA is "to protect public health by enforcing standards of safety and effectiveness." *State v. Scott*, 678 S.W.2d 50, 51 (Tenn. 1984).

**5. Washington**: Wash. Rev. Code § 69.04.001 states its purpose as safeguarding public health and protecting consumers from injury — with no mention of creating a private cause of action for drug manufacturers.

While the broadened standing provisions of state consumer protection statutes may permit "any person" to bring claims in certain circumstances, Lilly has not demonstrated — and cannot demonstrate — that these provisions were designed to allow a brand-name drug manufacturer to eliminate competition from a licensed compounding pharmacy. A Rule 7 reply would require Lilly to make that showing.

## IX.  A Reply Will Promote Judicial Efficiency

Lilly's position that "the efficient next step in this case is discovery" (ECF No. 84 at 1) ignores the very purpose of Rule 7 as endorsed by *Cunningham*. Discovery in this case will be extensive and burdensome--and anticipated to be extremely costly. A Rule 7 reply will "sharpen[] the issues for summary judgment and prevent[] Lilly from imposing unwarranted discovery burdens on Empower." As Judge Rosenthal explained in *Revive Rx*, Rule 7 "empowers district courts to insist that plaintiffs file a reply addressing viable statutory exemptions, to identify claims that likely will not survive a future summary-judgment motion and should not entitle plaintiffs to impose on defendants the burden of costly discovery." 812 F. Supp. 3d at 737 (emphasis added).

Lilly's Opposition demonstrates precisely why this case calls for that procedure. Lilly has offered no cogent explanation for why Empower's regulatory exemptions — which this Court has acknowledged have facial merit — do not render its claims futile. Rather than subject both parties

to the cost and burden of discovery on claims whose viability remains unresolved, this Court should order Lilly to put its cards on the table.

**PRAYER**

For all of the foregoing reasons, Empower respectfully requests that this Court grant its Motion and order Lilly to file a reply to Empower's Answer pursuant to Federal Rule of Civil Procedure 7(a)(7), and grant Empower any and all relief to which it is entitled in law or in equity.

Dated: June 10, 2026

Respectfully submitted,

**FISHERBROYLES**

By: _/s/ Anthony J. Calamunci_
Anthony J. Calamunci (*Attorney-in-Charge*)
6800 W. Central Avenue, Suite E
Toledo, Ohio 43617
(567) 455-5257
anthony.calamunci@fisherbroyles.com
Lisa A. Powell
Texas Bar No. 16204215
lisa.powell@fisherbroyles.com
Trent D. Stephens
Texas Bar No. 24008081
trent.stephens@fisherbroyles.com
2925 Richmond Ave., Ste. 1200
Houston, Texas 77098
(713) 425-3730

**BECK REDDEN LLP**
Geoff A. Gannaway
Texas State Bar No. 24036617
Federal I.D. No. 37039
ggannaway@beckredden.com
David J. Beck
Texas Bar No. 00000070
Federal I.D. No. 16605
dbeck@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700

- 14 -

**HYMAN, PHELPS & MCNAMARA, P.C.**
Karla L. Palmer (Pro Hac Vice)
kpalmer@hpm.com
1101 K Street N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7542

**ATTORNEYS FOR DEFENDANT
EMPOWER CLINIC SERVICES, L.L.C.
d/b/a EMPOWER PHARMACY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of June, 2026, I have caused the foregoing to be electronically filed with the Court using the Court's CM/ECF System which sends notification of such filing to all counsel of record.

/s/ Anthony J. Calamunci
Anthony J. Calamunci

- 15 -